[Crim. No. 6456. Fifth Dist. July 13, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK E. BRUNNER, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Augustus Noland, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Linda A. Cabatic, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**THE COURT.**\*—In 1979, appellant was convicted on his guilty plea of one count of lewd and lascivious acts upon the body of a child under age 14 (Pen. Code, § 288). In 1980, criminal proceedings were suspended and appellant was committed to Atascadero State Hospital as a mentally disordered sex offender (MDSO) under former Welfare and Institutions Code section 6300 et seq. In 1982, appellant was returned from Atascadero and the trial court found he remained dangerous but was unamenable to further treatment. Criminal proceedings were reinstated and appellant was sentenced to prison for the four-year middle base term, with actual time credits, but not conduct credits, for the period spent in state hospital.

In *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], the Supreme Court held no equal protection violation occurred in the denial of conduct credits to a person in appellant's position for the period of his treatment as an MDSO. (*Id.,* pp. 506-507.) *Sage* relied on *People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92], which found no equal protection violation in the denial of in-hospital conduct credits to reduce an MDSO's maximum term of commitment. (*Id.,* pp. 233-235.)

*Saffell* involved former Welfare and Institutions Code section 6316.1 which expressly precluded in-hospital conduct credits. This section was in effect when appellant was committed as an MDSO. However, effective January 1, 1982, the Legislature repealed the MDSO law and replaced it with Penal Code sections 1364 and 1365. At the time appellant ultimately was sentenced to prison in 1982, section 1364 provided that "When any person is convicted of a sex offense against a person under the age of 14 years . . . there shall be no hearing to determine whether the person is a mentally disordered sex offender." Rather, the trial court was to order the person delivered to the Department of Corrections. Under certain conditions, at the beginning of the person's third year prior to release, the Department of Corrections was required to transfer him to a state hospital for evaluation and preparation of a diagnostic report. If the diagnostic report recommended such treatment and the person consented, the Department of Corrections

---

\*Before Zenovich, Acting P. J., Woolpert, J., and Hamlin, J.

was required to transfer him to a state hospital. If the diagnostic recommended against treatment, then the person was to be returned to the Department of Corrections to serve out his sentence.

Section 1364 expressly precluded release on out-patient status pursuant to such treatment, release before the person's determinate sentence law (DSL) term of imprisonment ended, or extended treatment beyond the imposed DSL term. It provided for the return to the Department of Corrections of a person who refused to cooperate, requested return, or was found unamenable. Finally, section 1364 provided: "All days of confinement in a state hospital for testing and treatment shall be credited to the person's term of imprisonment and the provisions of [Pen. Code] section 2931 shall apply."[1]

■ Appellant first argues he "is entitled to the ameliorative effect of legislation redefining punishment, passed after the commission of his offense." It is unclear whether appellant suggests that he is entitled to conduct credits because the Legislature repealed the MDSO statute, which had expressly precluded conduct credits, or because the new law expressly provided for conduct credits for persons treated under section 1364. Whatever his precise position, Statutes 1981, chapter 928, repealing the MDSO law and enacting sections 1364 and 1365, is not a statute lessening punishment. Thus, the principle of *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] does not apply. (See *In re Kapperman* (1974) 11 Cal.3d 542, 546 [114 Cal.Rptr. 97, 522 P.2d 657].)

In any event, the Legislature declared: "Nothing in this act shall be construed to affect any person under commitment under Article 1 (commencing with Section 6300) of Chapter 2, Part 2 of Division 6 of the Welfare and Institutions Code prior to the effective date of this act." The Legislature noted it had made "the repeal of the MDSO commitment procedures prospective only." (Stats. 1981, ch. 928, § 3, p. 3485.)

■ Appellant also argues conduct credits should be awarded for his Atascadero stay because "There is no compelling state interest in treating

---

[1]Effective January 1, 1983, section 1364 was materially amended in various ways which substantially scaled down the state hospital program. The amended section provides for 1.) Department of Mental Health development of "a voluntary experimental treatment program that can be evaluated, limited to no more than 50 beds . . ."; 2.) joint screening of inmates by the Department of Mental Health and the Department of Corrections "based upon program criteria, procedures, and guidelines developed by the Department of Mental Health in consultation with the Department of Corrections"; 3.) treatment only during the last two years of incarceration. (Stats. 1982. ch. 1549, § 4, p. 6035.) Prior to January 1, 1983, section 1365 provided, in pertinent part: "It is the intent of the Legislature that persons committing sex offenses specified in Section 1364 have the opportunity during their time of incarceration to participate voluntarily in a state hospital program." Effective January 1, 1983, section 1365 was amended to delete this language. (Stats. 1982, ch. 1549, § 5, p. 6036.)

appellant differently from persons presently convicted and sentenced to state prison who receive conduct credits for treatment time spent in a state hospital." We take this to mean that appellant contends a denial of conduct credits would violate equal protection.

The threshold question is whether appellant and persons sentenced and delivered to the Department of Corrections and later transferred for treatment under section 1364 as it read on January 1, 1982, are similarly situated with respect to the law at issue. Appellant assumes the answer is yes but we will conclude the answer is no.

Appellant stood before the trial court at his 1982 sentencing as a defendant whose offense, conviction, and commitment to Atascadero all occurred when the "treatment model" of the MDSO law represented the legislative policy for dealing with sexual offenders. This model afforded numerous benefits to a convicted sex criminal. First, where a person was convicted of any sex offense and it appeared to the trial court that probable cause existed to believe the person was an MDSO, the trial court had the power to adjourn the proceeding or suspend the sentence and certify the person for hearing and examination to determine whether he was an MDSO. (Former Welf. & Inst. Code, § 6302, subd. (a).) Indeed, where, as here, the defendant was convicted of a felony sex offense involving a child under age 14, the trial court was required to certify the person for such hearing and examination. (Former Welf. & Inst. Code, § 6302, subd. (c).)

Second, if the trial court found the person was an MDSO who could benefit by treatment in a state hospital or other treatment facility, the trial court was required to exercise its discretion as to whether to return him to criminal court for further disposition or to civilly commit him for treatment. (Former Welf. & Inst. Code, § 6316, subd. (a)(1).) The exercise of this discretion was subject to judicial review. (*People* v. *Lock* (1981) 30 Cal.3d 454 [179 Cal.Rptr. 56, 637 P.2d 292].)

Third, the initial commitment could be to a state hospital or to an appropriate public or private treatment facility or even to outpatient status. (Former Welf. & Inst. Code, § 6316, subd. (a)(1).)

Fourth, if the person was committed for inpatient treatment, he could, under certain circumstances, later receive outpatient treatment. (Former Welf. & Inst. Code, § 6325.3.)

Fifth, while the person's maximum term was equal to the maximum he could have received for the underlying crime (former Welf. & Inst. Code, § 6316.1)—and indeed could be extended on the requisite showing (former

Welf. & Inst. Code, § 6316.2)—the person might be returned to court with a favorable report (former Welf. & Inst. Code, § 6325, subd. (a)) and, depending on the offense and the person, be released on probation (former Welf. & Inst. Code, § 6325, subd. (c)). Indeed, in *People* v. *Saffell,* the Supreme Court quoted a recent evaluation of the MDSO program to the effect that " 'Offenders committed to the program tended to spend significantly less time institutionalized than did similar offenders sentenced to imprisonment.' " (*People* v. *Saffell, supra,* 25 Cal.3d 223, 231.) On the negative side, the person did not accrue conduct credits during his in-hospital period (former Welf. & Inst. Code, § 6316.1) either to reduce his maximum hospital commitment or a term of penal incarceration.

Penal Code section 1364 substituted a "punishment model." First, the defendant was not to receive an immediate, presentence hearing on whether he was an MDSO. Second, the trial court had no discretion to suspend criminal proceedings and civilly commit the defendant for treatment. Third, if and when the defendant received treatment, it would be at the state level and would not involve out-patient status. Fourth, no matter what progress (or lack thereof) the defendant made in the state hospital, he would not be released before (or held beyond) the end of his DSL term. Fifth, the defendant was entitled to in-hospital conduct credits.

Appellant was eligible for and in fact received many of the benefits of the treatment model: immediate hearing on MDSO status and amenability; immediate suspension of criminal proceedings and civil commitment for treatment, with the potential for early release; and immediate treatment. He avoided the "disadvantages" or "burdens" of the punishment model. In 1982, he did not stand before the trial court in the same position as a defendant who was never eligible for—and, needless to say, never received—the benefits of the treatment model.

Simply stated, a person convicted and committed to state hospital during the era of the treatment model is not similarly situated vis-à-vis a person subject to the punishment model. The theory of the law has changed. Section 1364's award of conduct credits is part and parcel of the punishment model: since a defendant is not to be released before the end of his DSL term, regardless of the effectiveness of any treatment, a denial of conduct credits would leave him worse off than the state prisoners *not* transferred to state hospital and thus create real equal protection problems. On the other hand, equal protection does not require that a defendant who has received substantial benefits under the treatment model also receive, selectively, one

benefit of the punishment model given to other persons denied the benefits that defendant received.

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1983.