[No. F001890. Fifth Dist. Mar. 26, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
HERMAN L. JOBINGER, JR., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Part I is not published as it does not meet the standards for publication contained in rule 976(b), California Rules of Court.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Harvey Zall and Eric J. Coffill, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Arnold O. Overoye, Assistant Attorney General, and Robert D. Marshall, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

Two issues are presented in this appeal: (1) whether the trial court erred in considering certain factors in aggravation in sentencing appellant to prison* and (2) whether appellant is entitled to good conduct and participation credits (conduct credits) for the presentence time he spent at Atascadero State Hospital as a mentally disordered sex offender (MDSO).

We hold that although the trial court erred in considering certain factors in imposing the aggravated sentence on the principal term (count 8—rape), the error does not compel a remand since there is no reasonable probability that a different term would have been imposed. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)*

We also hold as a matter of equal protection of the laws that appellant is entitled to conduct credits for the time spent at the state hospital. We remand for the trial court to determine the specific number of days for which appellant is entitled to credit pursuant to Penal Code section 2931 calculated from July 29, 1980.

Appellant pleaded guilty to four counts of rape, three counts of burglary, three counts of assault with intent to commit rape and one count of false imprisonment as a reasonably related offense of assault with intent to commit rape. Criminal proceedings were suspended pursuant to Welfare and

---

*See footnote 1, *ante,* page 689.

Institutions Code section 6300, and MDSO proceedings were instituted. The court thereafter found appellant to be an MDSO.

Appellant was committed to the Atascadero State Hospital on March 21, 1980, for a period of 18 years and 4 months with credit for time served of 205 days.

About two and one-half years later, the medical director of Atascadero State Hospital found that although appellant was still an MDSO, he was unamenable to further treatment. Appellant was referred back to the superior court, and criminal proceedings were reinstated.

Appellant was sentenced to prison for a total term of 17 years and 8 months.[2] The sentences were to run consecutively because the court found that all the crimes were "separate and distinct." Appellant was given a total of 1,273 days' credit which included 223 days' actual local time, 111 days' local conduct credits and 939 actual institutional days' credits. No conduct credits were given for these institutional days. The court set forth aggravating and mitigating circumstances at length, and it found that the aggravating circumstances significantly outweighed those in mitigation.

Appellant filed a timely notice of appeal.

## STATEMENT OF THE FACTS

Appellant, nicknamed the "East Fresno Rapist" by the local media, was apprehended after three years of rapes, burglaries and assaults. He would typically isolate a woman who was home alone, remove a screen from her window in the middle of the night, enter and commit the rape or sexual assault while covering the victim's head with a blanket or pillow. No harm was inflicted upon the victims aside from that inherent in the crimes themselves.

---

[2]The total sentence was computed as follows:

| | |
|---|---|
| Count 2—false imprisonment | indeterminate |
| Count 4—rape | one year (consecutive; nonviolent) |
| Count 5—burglary | one year, four months (consecutive; violent) |
| Count 8—rape | eight years (principal term) |
| Count 10—rape | two years (consecutive; violent) |
| Count 13—burglary | one year (consecutive; nonviolent) |
| Count 14—assault | one year (consecutive; nonviolent) |
| Count 16—assault | one year (consecutive; nonviolent) |
| Count 18—rape | one year, four months (consecutive; violent) |
| Count 20—burglary | one year (consecutive; nonviolent) |
| Count 22—assault | [six] years (stayed) |
| Total | seventeen years, eight months |

During his two and one-half year stay at Atascadero following his apprehension, appellant developed a "relationship" with a female staff member. His inability to break off this relationship after repeatedly stating he would do so indicated to his doctors that he was unable to control his compulsions and appears to be the primary reason for his referral back to the superior court for sentencing.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . .

II

*Conduct Credits for Time Spent at*
*Atascadero State Hospital as an MDSO*

Appellant contends he was denied equal protection of the laws when the trial court failed to grant him conduct credits for time spent at the state hospital under an MDSO commitment. ▮▮ Appellant advances two theories to support his argument: (1) that the enactment of Penal Code section 1364 extending conduct credits under Penal Code section 2931 to persons committed as MDSO's after January 1, 1982, must be given retroactive effect so as to apply to appellant who was committed to the state hospital on March 21, 1980; and (2) the amendments to Welfare and Institutions Code section 3201, subdivision (c), effective July 29, 1980, extending conduct credits to narcotics addicts committed for rehabilitation and protective purposes to the California Rehabilitation Center (CRC) remove any rational basis for denying the credits to those like appellant who have been committed as MDSO's. ▮ Appellant's first contention is answered by this court's decision in *People* v. *Brunner* (1983) 145 Cal.App.3d 761 [195 Cal.Rptr. 367] where we held: ". . . a person convicted and committed to state hospital during the era of the treatment model is not similarly situated vis-à-vis a person subject to the punishment model. The theory of the law has changed. Section 1364's award of conduct credits is part and parcel of the punishment model: since a defendant is not to be released before the end of his DSL term, regardless of the effectiveness of any treatment, a denial of conduct credits would leave him worse off than the state prisoners *not* transferred to state hospital and thus create real equal protection prob-

---

*See footnote 1, *ante,* page 689.

lems. On the other hand, equal protection does not require that a defendant who has received substantial benefits under the treatment model also receive, selectively, one benefit of the punishment model given to other persons denied the benefits that defendant received." (*Id.*, at pp. 766-767.) We found in *Brunner, supra,* that the repeal of Welfare and Institutions Code section 6316.1 which provided for no conduct credits for time spent as an MDSO and enactment of Penal Code section 1364 granting conduct credits in the same situation represented a legislative change from a "rehabilitative model" to a "punishment model" and that the defendant could not demand the benefits of each on an equal protection theory. Since appellant, like *Brunner,* was committed to Atascadero State Hospital before the enactment of Penal Code section 1364 on January 1, 1982, appellant has reaped the benefits of former Welfare and Institutions Code section 6316.1 so he cannot now argue that he has been denied equal protection by the trial court's failure to grant him conduct credits under Penal Code section 1364.

 Appellant's second theory is that he is entitled to credits from July 29, 1980, to the end of his hospitalization because since that time narcotics addicts committed to CRC pursuant to Welfare and Institutions Code section 3201, subdivision (c),[3] are entitled to such credits. In essence, appellant argues that MDSO's and CRC addicts are now similarly situated so as to require equal treatment of them for conduct credit purposes. The argument is persuasive.

The policy reasons which have justified disparate treatment of MDSO's and CRC addicts vis-à-vis prisoners in custody have been greatly eroded by recent changes in the law. For example, both CRC addicts under Welfare and Institutions Code section 3201, subdivision (c), and MDSO's under Penal Code section 1364[4] are now entitled to have good behavior and participation credits taken into consideration in the calculation of their maxi-

---

[3]Welfare and Institutions Code section 3201, subdivision (c), reads in relevant part: "(c) Any person committed pursuant to Article 2 (commencing with Section 3050), whose execution of sentence in accordance with the provisions of Section 1170 of the Penal Code was suspended pending a commitment pursuant to Section 3051, who has spent, pursuant to this chapter, a period of time in confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in state prison had sentence been executed, *including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code,* shall, upon reaching such accumulation of time, be released on parole under the jurisdiction of the Narcotic Addict Evaluation Authority subject to all of the conditions imposed by the authority and subject to the provisions of Article 1 (commencing with Section 3000) of Chapter 8 of Title 1 of Part 3 of the Penal Code. . . ." (Italics added; urgency, eff. July 29, 1980.)

[4]Penal Code section 1364 now reads in relevant part: "All days of confinement in a state hospital for testing and treatment shall be credited to the person's term of imprisonment and the provisions of Section 2931 shall apply."

mum term of commitment. Even though appellant cannot directly benefit from present MDSO legislation (*People* v. *Brunner, supra,* 145 Cal.App.3d 761), the mere enactment of Penal Code section 1364 reflects a legislative policy favoring conduct credits for MDSO commitment time.

Furthermore, there appears to be no persuasive rationale in case law for maintaining any distinction between MDSO's and CRC addicts, at least for conduct credit purposes. In *People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92] (reaffirmed in *People* v. *Sage* (1980) 26 Cal.3d 498, 506 [165 Cal.Rptr. 280, 611 P.2d 874]), the Supreme Court set forth several reasons for denying an MDSO's equal protection claim that he was entitled to the same conduct credits as a prison inmate. These reasons were that good-time credit is fundamentally at odds with the treatment of the mentally disturbed; that MDSO confinement offers incentives in itself for good behavior; that hospitals are ill-equipped to provide work-time opportunities; that hospitals don't have the ability or time to conduct disciplinary hearings to decide a loss of credits and, finally, that credits are meaningless when commitment can later be extended. While these factors may have been persuasive prior to the enactment of Penal Code section 1364, they become meaningless in the equal protection context in light of the Legislature's implied finding that these concerns are subordinate to an MDSO's right to conduct credits.

We recognize the dicta in *People* v. *Hankins* (1982) 137 Cal.App.3d 694 [187 Cal.Rptr. 210], suggesting that MDSO's and CRC addicts are not similarly situated for equal protection purposes: "In deciding whether Hankins is entitled to conduct credit under equal protection principles, we are cognizant of one fundamental difference between MDSO and narcotic addict confinement. *In practice,* an MDSO commitment is involuntary; the CRC commitment is largely voluntary. What compelling state interest is there in deterring narcotic addicts guilty of crimes from seeking treatment and rehabilitation while in custody? Few, if any, addicts are going to volunteer for CRC commitment knowing that if they are found 'unamenable to treatment' they will be deprived of conduct credits." (*Id.,* at p. 699, fns. omitted.) However, the *Hankins* court then said: "Theoretically, defendant's lack of motivation is not a factor and one found to be a fit subject may not refuse treatment. (Citation.) *Accordingly, a . . . [CRC commitment] can be involuntary.*" (*Id.,* at p. 699, fn. 10, italics added.)

In *People* v. *Lopez* (1978) 81 Cal.App.3d 103 [146 Cal.Rptr. 165], this court explained that a defendant's lack of motivation for rehabilitation is not a factor to be considered in determining whether a defendant could be committed to CRC. We found that "the entire statutory scheme manifests the Legislature's intent that a defendant's lack of desire for, or lack of

cooperation with, the treatment program should not defeat his commitment. Commitment to this program is not consensual but involuntary, although by civil process (*People* v. *Navarro, supra,* 7 Cal.3d 248, 265 [102 Cal.Rptr. 137, 497 P.2d 481])." (*Id.,* at p. 111.) Thus, there is no discretion to refuse to institute CRC proceedings for a person who appears to be a fit subject under the statutory criteria (see also *People* v. *Hankins, supra,* 137 Cal.App.3d 694, 699, fn. 10). Even assuming the underlying goal of MDSO and CRC commitment is treatment of an illness, we find no basis for concluding that a mentally disordered sex offender is less able to conform his conduct so as to earn credits than is a narcotics addict.

As a further distinction between a CRC commitment and an MDSO commitment, the Attorney General observes that a narcotics addict is committed to the Department of Corrections whereas an MDSO is committed to the Department of Mental Health, and consequently, as noted in *In re Martin* (1981) 125 Cal.App.3d 896, 902 [178 Cal.Rptr. 445]: "The Legislature does not intend an addict to be treated for longer than he could be imprisoned and it intends the 'credit' to apply *irrespective of the nature of his conduct while in CRC.*" (Italics added.) In other words, to make the CRC program workable, the Attorney General argues, the Legislature saw fit to limit the period drug addicts could be treated to two-thirds of the prison term imposed, irrespective of the addict's conduct while in the program. We disagree with this interpretation.

The recent case of *People* v. *Talton* (1983) 145 Cal.App.3d 729 [193 Cal.Rptr. 660] supports the theory that Welfare and Institutions Code section 3201, subdivision (c), contemplates that a narcotics addict must *earn* conduct credits while confined at CRC. *Talton* refutes the statements in *In re Martin, supra,* 125 Cal.App.3d 896 to the effect that such credits are automatically included in fixing the addict's maximum confinement time regardless of his behavior at CRC.

"The *Martin* decision went beyond its holding of eligibility for CRC inpatient conduct credits and added that the Legislature intended ' "credit" to apply irrespective of the nature of his conduct while in CRC.' (125 Cal.App.3d at p. 902.) . . .

"*Martin* looked to the terms of Welfare and Institutions Code section 3201, subdivision (c), and said that the statute 'appears to give him credit even when he does not "participate" or when his conduct might not have warranted it in another institution.' (At p. 900.) . . .

"We do not agree with that portion of the *Martin* decision which would apply *unearned* CRC conduct credits against a state prison sentence. . . .

"........................

"While the current language of the statute differs somewhat from the statutory language considered by *Martin,* the equal protection rationale of *Martin* and later cases remains unaffected. However, neither the prior nor current statutory language justifies the *Martin* conclusion that the statute shows a legislative intent to provide *unearned* conduct credits.

"Both prior and present versions of Welfare and Institutions Code section 3201, subdivision (c), refer to the 'good behavior and participation credit *provisions* of Article 2.5 (*commencing with* Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code,' (italics added). Article 2.5 covers Penal Code sections 2930-2935. Thus, the Legislature referred to the whole of article 2.5 as evidenced by use of the words 'provisions' and the use of 'commencing with.' When the statute is correctly read, it refers not only to the granting of custody credits *but also to the forfeiture of custody credits because sections 2930-2935 cover both the giving and forfeiture of credits.*

"We have received varying points of view from the parties concerning the mechanics involved in the sentencing court's determination of CRC in-patient custody credits. These positions fail to recognize that Welfare and Institutions Code section 3201, subdivision (c), already requires the Department of Corrections to apply the provisions of Penal Code sections 2930-2935 to CRC patients and that the credit and forfeiture procedures are, presumably, already in place and operational.

"The manner in which credits are to be applied by the sentencing court is straightforward and familiar. The sentencing court is required to apply 'rehabilitation facility' credits (Pen. Code, § 2900.5, subd. (a)) to the sentence which would include application of CRC inpatient conduct credits. Welfare and Institutions Code section 3201, subdivision (c), requires the Department of Corrections to compute CRC conduct credits in the manner prescribed by Penal Code sections 2930-2935. Thus, the Department of Corrections 'can readily provide the court with the necessary computation and/or records. Any dispute over the right to credit, the number of days of credit, or the judgment or judgments to which the credits are applicable can then be resolved at the probation and sentencing hearing.' (*People* v. *Sage, supra,* 26 Cal.3d at p. 509.)" (*People* v. *Talton, supra,* 145 Cal.App.3d at pp. 731-733, fn. omitted, final italics added.)

As did the *Talton* court, we interpret Welfare and Institutions Code section 3201, subdivision (c), to mean that the provisions of Penal Code section 2930 et seq. will be applied in calculating the period of an individual's CRC confinement. Penal Code section 2931 requires that performance of certain

acts and the nonperformance of other acts on the part of a defendant enter into the calculation of credits. A defendant must "forebear [ ] from any act for which the [defendant] could be prosecuted in a court of law" (see Pen. Code, § 2931, subd. (b)) in order to receive his maximum good-time credits and "participate in the specified [work] activities" (see Pen. Code, § 2931, subd. (c)) in order to receive his maximum work-time credits.

Finally, we are aware of the recent decision in *Baker* v. *Superior Court* (1984) 35 Cal.3d 663 where the Supreme Court held that persons committed as MDSO's before January 1, 1982 (the date of enactment of Pen. Code, §§ 1364, 1365), could nevertheless have their commitment time extended pursuant to the provisions of former Welfare and Institutions Code sections 6300-6330. The court found that the language and the intent behind the new legislation warranted the conclusion that the statutes were meant to operate prospectively only. Our allowance of credits in the present case is not at odds with the rationale of *Baker*. We base our allowance of credits not on the asserted retroactivity of Penal Code sections 1364 and 1365, but on fundamental principles of equal protection.

We therefore hold it is a denial of equal protection for appellant to be denied presentence conduct credits for time spent at Atascadero State Hospital as an MDSO when such credits are afforded CRC addicts.

The judgment of conviction is affirmed. The matter, however, is remanded to the trial court for a determination of the number of conduct credits appellant is entitled to pursuant to Penal Code section 2931, calculated from July 29, 1980.

Andreen, J., and Hamlin, J., concurred.

A petition for a rehearing was denied April 20, 1984, and the opinion was modified to read as printed above.