[No. B003809. Second Dist., Div. Four. Nov. 1, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL RAY RICHARD, Defendant and Appellant.

## COUNSEL

Edward H. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Andrew D. Amerson, William R. Weisman and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Darrell Ray Richard appeals from the judgment entered upon his conviction by plea of guilty to assault with intent to commit rape

(Pen. Code, § 220, count IV) and assault with a deadly weapon (Pen. Code, § 245, subd. (a), count VI), and upon his admission that he personally used a knife in the commission of count IV (Pen. Code, § 12022, subd. (b)). He was sentenced to eight years in state prison upon resumption of criminal proceedings following return from a commitment as a mentally disordered sex offender (MDSO), and contends: "[I.] The appellant has been denied due process of law, in that the court abused its discretion in the imposition of sentence. [II.] The appellant is entitled to good conduct and participation credits for the presentence time he spent in the state hospital as a mentally disordered sex offender."

The record establishes that on October 5, 1980, appellant followed Paula F. to the laundry room of her apartment building, where he shut the door, turned off the lights, pulled down his pants, held a knife to her neck and threatened to kill her if she did not remove her clothing. He permitted her to return to her apartment when she told him she would give him money so he could go to a prostitute. On October 7, 1980, appellant followed Barbara F. into the elevator at her apartment building. He pushed a button to stop the elevator and approached Ms. F., who screamed and kicked him. He then pulled a knife. After Ms. F. struggled with him and grabbed the knife, appellant left the elevator. Ms. F. sustained three lacerations on her hand which required stitches. The probation report indicated that appellant identified himself as "Roger Hansen" upon his apprehension by police.

Following appellant's plea of guilty on March 19, 1981, pursuant to a negotiated settlement, criminal proceedings were adjourned and MDSO proceedings were initiated. Upon a finding that appellant was an MDSO who would benefit from care and treatment in a state hospital, he was ordered placed in such hospital pursuant to former Welfare and Institutions Code section 6316 for a maximum period of eight years.

On July 15, 1983, appellant waived his rights to contest his return under Welfare and Institutions Code section 6325, and criminal proceedings were resumed. Following an evaluation pursuant to Penal Code section 1203.03 and the preparation of two supplemental probation reports, the court, also taking into consideration a report from the Pleasant Run School which appellant had attended, sentenced appellant to eight years in state prison, stating: "For Count [IV], 220 P.C., the defendant will be sentenced to the State Prison for the base term of 72 months, six years, high term.

"The court is selecting the high term because of its assessment of dangerousness of this defendant as it existed at the time of the commission of the offenses and for the increasing violence from Count IV to Count VI,

that there was premeditation; that the defendant falsified his background and used an alias.

"I am not firmly set that this is legally permissible, however, because as I say, if dangerousness is not included in that scale, then I don't think it supports a high term, and I expressly state that on the record. . . .

"For the offense for the enhancement of using a knife under 12022(b), there will be an additional 12 months, for a total of 84 months on Count IV.

"Count VI, the 245(a), is a separate offense deserving of separate punishment where the victim was actually injured. The defendant will be sentenced to the base term there which would again be 48 months in the State Prison. That's the high term for the reasons I have previously specified; in addition to which the fact that the victim was injured, suffered three cuts and five stitches. That will be ordered to run consecutively. By operation of law 36 of those 48 months will then be stayed."[1] The court awarded 1,167 days credit for actual time served including 849 days in the state hospital and 318 days in jail, and an additional 159 days conduct credit attributable to time spent in custody other than in the hospital, for a total of 1,326 days.

■ Appellant's first contention is unavailing. The trial court did not err in citing appellant's "dangerousness" as a reason for its choice of the upper term on count IV. This factor is fully supported by the record, including the original report of the probation officer, the reports of a psychiatrist and a psychologist who examined appellant in 1981, the subsequent report of the members of the staff of Atascadero State Hospital, and the diagnostic study undertaken in August 1983. This characteristic of the defendant was properly considered by the sentencing court as an additional circumstance reasonably related to its sentence choice. (*People* v. *Wright* (1982) 30 Cal.3d 705, 710 [180 Cal.Rptr. 196, 639 P.2d 267]; *People* v. *Bloom* (1983) 142 Cal.App.3d 310, 321 [190 Cal.Rptr. 857]; Cal. Rules of Court, rule 408(a).) As the factor of dangerousness as set forth by the court does not rest upon appellant's use of the knife in either of the instant offenses, the imposition of a one-year enhancement for such use did not violate the

---

[1]The court had earlier stated that the term on count VI would run consecutively, stating, "It is a separate offense with a separate victim who was injured, whether she was injured as the result of struggling or an aggressive attack by the defendant makes no difference as far as a factor in aggravation is concerned. Anybody that goes in with an eleven-inch bread knife and wields it around, you can expect that some people are going to try to defend themselves. From that standpoint there is no question in my mind that it has to be a consecutive sentence."

prohibition against dual use of facts. (Cf. *People* v. *Vizcarra* (1980) 110 Cal.App.3d 858, 864 [168 Cal.Rptr. 257].)

█ Similarly, in stating that the assault upon Barbara F., count VI, was a separate offense involving a separate victim, the trial court set forth adequate reasons for ordering the term on count VI to run consecutively to that on count IV. (*People* v. *Ginese* (1981) 121 Cal.App.3d 468, 478-479 [175 Cal.Rptr. 383]; Cal. Rules of Court, rule 425(a)(1), (2), (3).) The additional reference to the same reasons for imposing both the upper term and the consecutive term as to count VI, while error (*People* v. *Lawson* (1980) 107 Cal.App.3d 748, 751-752 [165 Cal.Rptr. 764]), was clearly harmless as the sentence as to count VI will constitute one-third of the midterm by operation of law. (Pen. Code, § 1170.1, subd. (a).)

█ Appellant's second contention, wherein he asserts that principles of equal protection mandate the granting of conduct credits to those confined in state hospitals as mentally disordered sex offenders under former Welfare and Institutions Code section 6300 et seq., is well taken. The enactment of Welfare and Institutions Code section 3201, subdivision (c), effective July 29, 1980, provides narcotics addicts civilly committed to the California Rehabilitation Center (CRC) "with the functional equivalent of a right to good time/work time credit . . . ." (*In re Martin* (1981) 125 Cal.App.3d 896, 900 [178 Cal.Rptr. 445].) In *People* v. *Jobinger* (1984) 153 Cal.App.3d 689, 694 [200 Cal.Rptr. 546], mod. 154 Cal.App.3d 603c, the court found that MDSOs and CRC addicts "are now similarly situated so as to require equal treatment of them for conduct credit purposes. . . ." Accordingly, the court concluded that considerations of equal protection require the award of precommitment conduct credits for time spent at a state hospital as a MDSO. This court finds the reasoning of the *Jobinger* court persuasive, and therefore we agree that appellant is entitled to conduct credits for the time which he spent at state hospital as an MDSO.

The judgment is modified to provide 424 days of conduct credits in addition to the 1,326 days of credit previously awarded, for a total award of 1,750 days precommitment credit. As modified, the judgment is affirmed.

Woods, P. J., and Arguelles, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 30, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.