[Crim. No. 15485. Fourth Dist., Div. One. Mar. 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE ALBERTO CRUZ, Defendant and Appellant.

---

COUNSEL

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jesus Rodriquez and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Jorge Alberto Cruz appeals after he was sentenced to prison for six years, four months, following his return from Patton State Hospital where he spent approximately 20 months under a commitment as a mentally disordered sex offender ((MDSO); former Welf. & Inst. Code, § 6300 et seq., repealed by Stats. 1981, ch. 928, § 2, p. 3485, eff. Jan. 1, 1982). Cruz challenges the trial court's denial of probation and its refusal to grant conduct credit (Pen. Code, § 2931)[1] for the time he spent in Patton.

Cruz, born May 22, 1960, committed the sex crimes in question on October 31, 1979, involving a 14-year-old female, on February 29, 1980, involving a 16-year-old female, and on July 9, 1980, involving a 22-year-old female. Each offense involved forced sexual activity at knife point after he used intimidating tactics to cause the victims to accompany him. In a plea bargain on March 17, 1981, Cruz pleaded guilty to lesser included offenses of unlawful sexual intercourse (§ 261.5), oral copulation with a person under 18 (§ 288a, subd. (b)(1)) and assault with intent to commit rape and with use of a knife (§§ 220, 12022, subd. (b)). Criminal proceedings were suspended and Cruz was found to be an MDSO and committed to Patton. Cruz remained in Patton for 606 days before criminal proceedings were resumed. On April 4, 1983, the trial court sentenced him under section 1170.1 to a principal term of four years, the middle term for the assault to rape count, one year for the knife use, and to subordinate terms of eight months each for the remaining two counts.

The trial court credited Cruz with 79 days of actual local time,[2] 606 days in Patton and 118 days of local conduct credit, for a total of 803 days of credit. The court, however, denied him the conduct credit provided for under section 2931, which would have amounted to 303 additional days of credit if it had been applied.

I

■ Cruz contends the trial court abused its discretion in not finding unusual circumstances existed and thus denying probation.[3] He emphasizes his

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]The "Abstract of Judgment-Commitment" reflects only 55 days of actual local time was credited to Cruz. It is apparent from the total 803 days and from the probation officer's supplemental report that Cruz spent an additional 24 days in actual local custody. The abstract should be corrected accordingly and forwarded to the Department of Corrections.

[3]Section 1203, subdivision (e)(2), states probation shall not be granted to any person who uses or attempts to use a deadly weapon in the crime, "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation . . . ."

youth, lack of a prior record, his visibility and support within the community and his potential to contribute to society. He attaches a great deal of material from Patton reporting on his performance there.

The trial court considered this material before sentencing. It also considered a report of Patton's medical director who described Cruz as unable to benefit from further treatment there and a danger to the health and safety of others. The report variously describes Cruz as defensive and immature, as one who displaces his anger and hostility onto others when confronted about his maladapted behavior, and as one who uses intimidating methods in dealing with his peers. The report reflected Cruz' view he had received maximum benefit from hospitalization and no constructive purpose would be served by his remaining in a therapeutic environment.

The trial court also considered a January 13, 1983, medical evaluation which acknowledged Cruz has improved to a considerable extent and benefited from the therapy at Patton but agreed with reports from Patton that Cruz possibly could benefit from more treatment and is still a risk. This report said in part, "we . . . still must consider Mr. Cruz to be a danger to the health and safety of others." The January 1983 report concluded, "This man continues to be a mentally disordered sex offender."

The trial court heard testimony on the question of whether this was an unusual case and whether the interests of justice would be served by a grant of probation. Appropriate exercise of its discretion on these questions is reflected in the record of the trial court's explanation of why this was not a case fitting within the exception.[4] Cruz has shown no abuse of discretion in

---

[4]The court explained, in part: ". . . I'm satisfied that Mr. Cruz has not presented to me through you a case by which I can decide that this is in the interests of justice, that the interests of justice would be best served by granting probation. I have gone through the criteria. The closest criterion that would seem to be applicable is that which Mr. Patrick referred to earlier which is that he is youthful, and prior to this offense had no significant record of prior criminal offenses rather than his reported admissions to the young ladies as he convinced them they ought to participate in those wrongful acts, unsettling and demeaning acts, which he said, 'I killed before and stabbed before,' or whatever he said as I already referred to, intimidating.

"I think that Mr. Cruz has in the past been a greater intimidator than he has been in the most recent past. But still the word 'intimidation' doesn't become a person's jacket. The word 'intimidation' does appear in his staffing reports which have been received by the court as well.

"Perhaps Mr. Cruz is somewhat of a manipulative person which perhaps speaks well for his intelligence and perhaps speaks well for eventually what will occur to him when he gets out into the community. Hopefully that will be good things and we will hear good things from you.

"I am denying probation because I cannot find this to be the unusual case under 416 with which rule I have an intimate knowledge and I have gone through very carefully for the purposes of ascertaining whether there is a criterion warranting such a decision. Probation is denied."

the denial of probation. (See *People* v. *Axtell* (1981) 118 Cal.App.3d 246, 257 [173 Cal.Rptr. 360].)

## II

■ Cruz contends the court erred in denying him conduct credits under section 2931 amounting to 303 days for the time he spent at Patton as an MDSO.

There are now two cases *People* v. *Jobinger* (1984) 153 Cal.App.3d 689 [200 Cal.Rptr. 546] (mod. 154 Cal.App.3d 603c) and *People* v. *Richard* (1984) 161 Cal.App.3d 559 [207 Cal.Rptr. 715], which hold MDSO's are entitled to conduct credits for the time spent in a hospital facility. (See also *People* v. *Saldivar* (1984) 154 Cal.App.3d 111, 116 [201 Cal.Rptr. 60].) We use the word "now" because there have been other cases since decertified by the California Supreme Court that held otherwise. (*In re Van Renselaar* (Cal.App.) (ordered depublished Oct. 19, 1984); *People* v. *Lovedy* (Cal.App.) (ordered depublished Jan. 3, 1985); and *People* v. *Abril* (Cal.App.) (ordered depublished Feb. 14, 1985.) Prompted by the disappearance of only those cases explaining why *Jobinger* was wrong we believe little will be gained by our contributing to the legal literature on this subject. Nudged toward firmer respect for the doctrine of stare decisis by the California Supreme Court's selective depublication process we merely cite *Jobinger* and *Richard* and give Cruz the conduct credits for the time he spent at Patton State Hospital.

### DISPOSITION

Judgment affirmed. The sentence is modified to reflect additional conduct credits of 303 days. The superior court and the Department of Corrections are directed to modify their records accordingly.

Cowett, J.,* concurred.

**LEWIS, J.**—I respectfully dissent from the views expressed in part II of the majority opinion and from the portion of this court's order granting Cruz the 303 days of conduct credit under Penal Code[1] section 2931 for time he spent in Patton as an MDSO. In my view, this court is bound by California Supreme Court precedent to deny the credit. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].)

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

Persons such as Cruz, committed as MDSOs before the effective date of the repeal of the MDSO provisions, January 1, 1982, remain subject to continued application of the former MDSO law even after its repeal. (Stats. 1981, ch. 928, § 3; *Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 666-668 [200 Cal.Rptr. 293, 677 P.2d 219].) The Supreme Court has held former MDSO law does not permit, and principles of equal protection do not require, a court to grant conduct credits for time in the MDSO treatment program. (*People* v. *Saffell* (1979) 25 Cal.3d 223, 233-235 [157 Cal.Rptr. 897, 599 P.2d 92]; *People* v. *Sage* (1980) 26 Cal.3d 498, 506-507 [165 Cal.Rptr. 280, 611 P.2d 874].) Since *Saffell* and *Sage,* there has been no legislation, intermediate appellate decision, or Supreme Court action overcoming the precedential force of those cases.

On the matter of legislative changes since *Saffell* and *Sage,* it has been postulated indicia of legislative intent to grant the conduct credit to MDSOs emerged from a statute setting up a voluntary experimental treatment program for child molesters and violent sex offenders during their last two years in prison (§ 1364) and from a change in the law pertaining to narcotic addict civil commitments to the California Rehabilitation Center (CRC). (Welf. & Inst. Code, § 3201, subd. (c).) Both legislative enactments included provisions enabling persons in the particular program to earn conduct credits. *People* v. *Jobinger* (1984) 153 Cal.App.3d 689 [200 Cal.Rptr. 546], followed by *People* v. *Richard* (1984) 161 Cal.App.3d 559 [207 Cal.Rptr. 715], in essence considered such law changes as having the effect of putting MDSOs in the same class as narcotic addicts in CRC. Thus, *Jobinger* and *Richard* concluded MDSOs get the conduct credit based on principles of equal protection. Because the law changes pertain to persons who are *not* "by reason of mental defect, disease, or disorder . . . predisposed to the commission of sexual offenses to such a degree that [they are] dangerous to the health and safety of others" (Welf. & Inst. Code, § 6300), i.e., persons who are not MDSOs, I submit those changes have no significance to MDSOs who are in a class by themselves.

It is readily apparent *Jobinger* (and *Richard*) holds directly to the contrary of *Saffell* and *Sage. Jobinger,* moreover, reached a result exactly the opposite to a decision of the same court in *People* v. *Brunner* (1983) 145 Cal.App.3d 761 [195 Cal.Rptr. 361], which denied the conduct credit on Brunner's prison sentence after he spent about two years in hospital treatment as an MDSO. Brunner argued for the credit based on equal protection principles formulated from the Legislature's original enactment of section 1364 in the same statute by which it repealed the MDSO law. While *Jobinger* followed the *Brunner* rationale pertaining to an equal protection argument based on the original version of section 1364, it nevertheless held contrary to *Brunner* that Jobinger gets the conduct credit under essentially

identical presentencing MDSO treatment circumstances. *Brunner* and *Jobinger* are not reconcilable. Brunner is in prison without the benefit of the conduct credit for his MDSO treatment time while Jobinger is there with the conduct credit. *Brunner* represents precedent for denying the conduct credit to those who were committed and treated as MDSOs before January 1, 1982, and sentenced to prison later. I would follow *Brunner*.[2]

This court, in *People* v. *Jennings* (1983) 143 Cal.App.3d 148, 150 [191 Cal.Rptr. 592] (hg. den. Aug. 24, 1983), furnishes additional precedent for withholding the conduct credit from those who have been hospitalized for treatment, then returned to court and sentenced to prison. *Jennings,* involving sentencing after a treatment program for one found to be not presently sane, followed *Saffell* and disallowed the conduct credit. In *Jennings,* this court correctly likened the mentally incompetent defendant committed indeterminately for treatment to an MDSO for purposes of applying the *Saffell* rationale that the extension or withdrawal of credit as reward or punishment is inconsistent with the goals of a hospital treatment facility. (*Ibid.*) If the majority now is saying *Jobinger* is right because of its theory the MDSO, Jobinger, was similarly situated to a narcotic addict committed to CRC, then the majority should explain why the same view did not apply to Jennings' situation. The principles and results of the two cases are in conflict. The continuing vitality or lack of ongoing validity of *Jennings* should be discussed. Until *Jennings* is demonstrated to be wrong, I choose to follow that decision of this court which is consistent with *Saffell* and *Sage*. The same goes for *Brunner*.

The majority's emphasis on the depublication action of the Supreme Court is interesting. Is the majority saying, in effect, the Supreme Court has cast a judgment the depublished cases are wrong and *Jobinger* is right? This seems a shaky conclusion in light of the fact the Supreme Court had no petition for hearing before it in *Jobinger* and denied hearing in both conflicting cases of *Richard* and *Brunner*. It is also questionable in view of rule 977(a) of the California Rules of Court which forbids both citing and relying on unpublished opinions. If the Supreme Court believed the opinions which it depublished were wrong, would it not have granted a hearing in at least one of them?

Former Chief Justice Donald R. Wright has been quoted as saying, " '[w]ith few exceptions, the only opinions which are ordered to be nonpublished are those in which the correct result has been reached by the court

---

[2]In light of the majority's emphasis upon Supreme Court action short of filing opinions, I point out a petition for hearing before the Supreme Court in the *Brunner* case was denied September 29, 1983. There was no petition for hearing in *Jobinger* and petition for hearing in *Richard* was denied January 30, 1985.

of appeal but the opinion contains language which is an erroneous statement of the law and if left on the books would not only disturb the pattern of the law but would be likely to mislead judges, attorneys and other interested individuals.'" (Note (1977) 50 So.Cal.L.Rev. 1181, 1185, fn. 20.)

More recently, Associate Justice Joseph R. Grodin of the California Supreme Court has written "[t]he only consequence of a depublication order is that the opinion is not published in the Official Reports, and is therefore not citable as precedent." (Grodin, *The Depublication Practice in the California Supreme Court* (1984) 72 Cal.L.Rev. 514, 522-523.)

Considering the uncertainty of meaning attending an order of depublication, it is difficult to accept the majority's view there is stare decisis effect to be given to the depublication orders. The fact remains, defendants in the cases depublished with hearing denied are in prison without the benefit of the conduct credit, a result entirely consistent with *Saffell, Sage* and *Brunner.* How can we say the depublication orders have a stare decisis effect going the other way?

I share the unspoken concern of my colleagues for evenhanded justice, particularly where the liberty interest is concerned. However, the fact one or two other courts grant a benefit, here the conduct credit, in contravention to what I perceive to be binding Supreme Court precedent, does not justify our following the erroneous rulings. This is a matter of particular concern here because we are dealing with persons adjudicated as dangerous to others.

I would deny the conduct credit to Cruz.

Respondent's petition for review by the Supreme Court was denied May 16, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.