[No. C017650. Third Dist. Mar. 3, 1995.]

THE PEOPLE, Plaintiff and Appellant, v.
$31,500 UNITED STATES CURRENCY, etc., Defendant;
RUBEN PARRA RUIZ et al., Claimants and Respondents.

**COUNSEL**

John D. Phillips, District Attorney, and Phillip R. Urie, Deputy District Attorney, for Plaintiff and Appellant.

Frear Stephen Schmid for Claimants and Respondents.

## OPINION

**SIMS, Acting P. J.**—In this civil asset forfeiture proceeding for forfeiture of property connected with drug trafficking (Health & Saf. Code, § 11470 et seq.),[1] the People appeal from summary judgment and judgment on the pleadings entered in favor of claimants Ruben Parra Ruiz and Abelardo Parra Ruiz. The People contend the trial court erred in determining a criminal conviction for drug trafficking was a prerequisite to forfeiture. We agree and shall reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 1993, police made a traffic stop of claimants' car for a defective windshield. Since neither claimant had a driver's license, the police had the car towed (Veh. Code, § 22651, subd. (p)). An inventory of the car disclosed four ounces of marijuana, $31,500 cash, and a cellular phone. The officer issued Abelardo Ruiz a citation for possession of marijuana and released him.

On June 1, 1993, claimants were served with notice of nonjudicial forfeiture proceedings for the cash and cellular phone. Ruben Parra Ruiz timely filed a "claim opposing forfeiture" of the cash under section 11488.5. Abelardo Parra Ruiz filed a claim for the cellular phone. Consequently, on June 22, 1993, the People filed a complaint for forfeiture in the trial court.

In December 1993, claimants filed a motion for summary judgment or judgment on the pleadings, which was heard by the trial court on January 6, 1994. Claimants made two arguments. First, they argued that effective January 1, 1994, California's statutory asset forfeiture law lapsed by virtue of a self-sunsetting clause in the statutes (the 1988 Statutes), such that there is no more asset forfeiture law in California. Second, they argued in the alternative that assuming the sunsetting of the 1988 Statutes effected a revival of previously enacted statutes (the 1987 Statutes), the 1987 Statutes required a criminal conviction for drug trafficking as a prerequisite to forfeiture of a person's property.

Claimants submitted declarations, and the People did not dispute, that there have been no criminal charges or conviction for drug trafficking in this case.

The trial court rejected the argument that sunset of the 1988 Statutes left California with no asset forfeiture law. The trial court concluded that upon

---

[1]Undesignated statutory references are to the Health and Safety Code.

lapse of the 1988 Statutes the operative provision was one of two versions contained in the 1987 Statutes, which required a criminal conviction as a prerequisite to forfeiture.

Since there was no criminal conviction in this case, the trial court granted summary judgment in favor of claimants. The court also granted judgment on the pleadings in favor of claimants because the complaint made no allegation of a criminal conviction. On January 12, 1994, the court entered judgment directing the return of the money to Ruben Parra Ruiz and the return of the cellular phone to Abelardo Parra Ruiz. On January 12, 1994, the People filed a notice of appeal.

## DISCUSSION

■■■ The People contend the trial court erred in determining a criminal conviction for drug trafficking was a prerequisite for forfeiture of property. We agree.

### I. *History of Forfeiture Statutes*

Because this case raises questions as to the effect of changes in the law, we will trace the pertinent history of the statutes at issue.

The pertinent history for our purposes involves the enactments of 1987, 1988, and 1994. Although the seizure of property in this case occurred in 1993, at a time when the 1988 Statutes were in effect, lapse of the 1988 Statutes in January 1994 raises questions as to what law, if any, replaced the 1988 Statutes.

The particular provision of concern in this case is section 11488.4, which addresses the question whether a criminal conviction is a prerequisite to forfeiture of property.[2] Various versions of section 11488.4 have been enacted over the past several years. As will appear, only one of the various

[2]The only aspect of the forfeiture statutes at issue in this appeal is the question whether a criminal conviction is a prerequisite to forfeiture. We recognize the different versions of the forfeiture statutes differ with regard to other aspects of forfeiture proceedings, e.g., (1) whether the property's connection to drug trafficking must be shown by a preponderance of the evidence, clear and convincing evidence, or evidence beyond a reasonable doubt, and (2) whether it must be shown the claimant had actual knowledge of the connection. However, this appeal does not involve those aspects, and they have not been developed in the parties' arguments, though claimants make an oblique reference which we address, *post*. For the most part, however, we confine ourselves to the question presented on appeal—whether a criminal conviction is required.

versions of section 11488.4 required a criminal conviction of a drug-trafficking offense as a prerequisite to forfeiture of cash exceeding $25,000, and that version never became operative.[3]

As a road map to our discussion, the various versions of section 11488.4 as pertinent to the property at issue in this case may be summarized as follows:

1987 Statutes
 Section 4 (pre-1989)—no conviction required
 Section 5 (post-1989)—conviction required

1988 Statutes—no conviction required

1994 Statutes—no conviction required

As will appear in our discussion, the only version of section 11488.4 requiring a criminal conviction never became operative.[4]

A. *1987*

The 1987 Statutes[5] contained two versions of certain asset forfeiture provisions (including section 11488.4), one version to be operative until January 1, 1989, and the other version to become operative on January 1, 1989. Thus, section 4 of the 1987 Statutes set forth one version of section 11488.4 (hereafter section 4(1987)[6]), which by its own terms would expire on January 1, 1989, unless the Legislature extended or deleted that date. Section 5 of the 1987 Statutes set forth a second version of section 11488.4 (hereafter section 5(1987)), which provided: "(k) This section shall become operative on January 1, 1989." (Stats. 1987, ch. 924, § 5, p. 3118.)

---

[3]In addition to the $31,500 cash claimed by Ruben Parra Ruiz, this case involves forfeiture of a cellular telephone claimed by Abelardo Parra Ruiz. Though not discussed by the parties on appeal, none of the operative versions of section 11488.4 during the times at issue in this case has required a criminal conviction for forfeiture of this type of property. The fact that some versions of section 11488.4 specified a conviction was *not* required for cash exceeding a certain amount does not mean that a conviction *was* required for other types of property, because, as will appear, those versions of section 11488.4 also specified which types of property required a criminal conviction—cash under $25,000, vehicles, and real property. Thus, the judgment in favor of Abelardo Parra Ruiz must be reversed.

[4]Claimants assert a criminal conviction was required under predecessor statutes enacted in 1972, 1976, and 1982. However, none of those prior enactments are at issue in this case, where the property was seized in 1993.

[5]The parties refer to the 1987 Statutes, by the name of the bill's author, as "the Condit Law."

[6]Section 4(1987) provided in part: "(l) This section shall remain in effect only until January 1, 1989, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1989, deletes or extends that date." (Stats. 1987, ch. 924, § 4, pp. 3116-3117.)

Section 4(1987) (the pre-1989 version) provided that cash in an amount equal to or exceeding $25,000 was forfeitable even though the there was no criminal conviction for drug trafficking.[7] The People were merely required to prove in the forfeiture proceeding that the money was connected to drug trafficking as defined in the statutes. (Stats. 1987, ch. 924, § 4, p. 3115.)

Section 5(1987) (the post-1989 version) required a criminal conviction as a prerequisite to forfeiture.[8] However, Section 5(1987) did not go into effect on January 1, 1989, as originally intended, because the Legislature made some changes in the 1988 session.

### B. *1988*

In 1988, the Legislature made various amendments to the asset forfeiture laws. (Stats. 1988, ch. 1492.)[9] Among those changes, the 1988 Statutes: (1) temporarily amended Section 4(1987), and (2) repealed section 5(1987). (Stats. 1988, ch. 1492, §§ 9-10, pp. 5288, 5291.) The 1988 Statutes by their own terms were temporary provisions to be effective only from January 1, 1989 (Cal. Const., art. IV, § 8, subd. (c)) until January 1, 1994, at which time the asset forfeiture sections "as they read on December 31, 1988" would be revived.[10]

The 1988 Statutes did not require a criminal conviction as a prerequisite to forfeiture of any property (though the People had to prove a connection

---

[7]Section 4(1987) set forth as section 11488.4, subdivision (i)(4): *"In the case of* property described in subdivision (f) [money, negotiable instruments, securities, etc.] of Section 11470 that is *cash* or negotiable instruments *of a value of not less than twenty-five thousand dollars ($25,000),* the state or local governmental entity shall have the burden of proving by clear and convincing evidence that the property for which forfeiture is sought is such as is described in subdivision (f) of Section 11470. *There is no requirement for forfeiture thereof that a criminal conviction be obtained in an underlying or related criminal offense."* (Italics added; see Stats. 1987, ch. 924, § 4, p. 3115.)

Section 4(1987) also set forth, as section 11488.4, subdivision (i)(3), that a criminal conviction *was* required for forfeiture of (1) cash less than $25,000, (2) vehicles, and (3) real property. (Stats. 1987, ch. 924, § 4, p. 3115.)

[8]Section 5(1987) required that the People's petition for forfeiture be filed "with the superior court of the county in which the defendant has been charged with the underlying criminal offense." (Stats. 1987, ch. 924, § 5, p. 3117.) Subdivision (j) of the same provision stated: "If the defendant is found guilty of the underlying criminal offense, the issue of forfeiture shall be tried before the same jury . . . or . . . court . . . . At the hearing, the state or local governmental entity shall have the burden of proving beyond a reasonable doubt that the assets in question are subject to forfeiture pursuant to Section 11470." (Stats. 1987, ch. 924, § 5, p. 3118.)

[9]The parties refer to the 1988 Statutes as "the Katz law."

[10]An uncodified section 16 of the 1988 Statutes stated: "The provisions of the Health and Safety Code amended by this act shall remain in effect only until January 1, 1994, at which time those sections as they read on December 31, 1988, shall have the same force and effect as if they had not been amended." (Stats. 1988, ch. 1492, § 16, p. 5298.) Additionally, the

between the property and drug trafficking). (Stats. 1988, ch. 1492, § 9, p. 5290.) Thus, section 11488.4, subdivision (i), provided in part: ". . . [¶] A judgment of forfeiture does not require as a condition precedent thereto, that any defendant be convicted of an offense which made the property subject to forfeiture provided that the [facts giving rise to the forfeiture][11] occurred within five years of the seizure of the property or within five years of the notification of intention to seek forfeiture. . . ." (Stats. 1988, ch. 1492, § 9, p. 5290.)

To reiterate, the 1988 Statutes expired by their own terms on January 1, 1994, one week before the trial court ruled in this case. Expiration of the 1988 Statutes raised questions as to what law, if any, replaced the 1988 Statutes.

### C. *1994*

On August 19, 1994, a new bill (Assem. Bill No. 114 (1993-1994 Reg. Sess.) was signed into law, effective immediately as an urgency measure,

---

Legislative Counsel's Digest for the 1988 Statutes states: "(21) This bill would . . . continue the temporary sections affected by this bill and would repeal the versions of certain of those sections which are scheduled to become effective on January 1, 1989, but sections amended by the bill would be repealed and their December 31, 1988, versions revived on January 1, 1994." It is reasonable to presume that the digest expresses the Legislature's intent. (*Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439].)

A 1990 amendment codified the expiration date, adding to section 11488.4, subdivision (j), the following sentence: "This section shall remain in effect only until January 1, 1994, and as of that date is repealed." (Stats. 1990, ch. 1200, § 4.) Although the 1990 amendment did not codify the remainder of the uncodified section 16 of the 1988 Statutes regarding revival of the statutes as they read on December 31, 1988, the Legislature later reaffirmed this intent in the 1991 Statutes, wherein the Legislature amended the uncodified provision to exclude section 11489 (which was later covered by its own sunset provision). Thus, the Statutes of 1991, chapter 641, section 14, provides: "Section 16 of Chapter 1492 of the Statutes of 1988 is amended to read: [¶] Sec. 16. The provisions of the Health and Safety Code amended by this act, except Section 11489, shall remain in effect only until January 1, 1994, at which time those sections as they read on December 31, 1988, shall have the same force and effect as if they had not been amended."

[11]The 1988 Statutes used the term "offense," but the section was amended in 1990 to read "facts giving rise to forfeiture." (Stats. 1990, ch. 1200, § 4.) Thus, although no criminal conviction was required, the People had to prove by a preponderance of the evidence that the property was "subject to forfeiture as described in Section 11470." (§ 11488.4, subd. (i); Stats. 1988, ch. 1492, § 9, p. 5290.) Property was subject to forfeiture only if connected to a drug-trafficking offense. Thus, section 11470, subdivision (f), provided for forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of [specified drug-trafficking statutes], if the exchange, violation, or other conduct which is the basis for the forfeiture occurred within five years of the seizure of the property, or the filing of a [complaint/petition] under this chapter, or the issuance of an order of forfeiture of the property, whichever comes first." (Stats. 1988, ch. 1492, § 1, p. 5286.).]

with the express intent of reducing the confusion over the state of asset forfeiture law.[12] (Stats. 1994, ch. 314, § 26.)[13]

The 1994 law revives the 1988 Statutes (which expired on January 1, 1994) for pending cases only. Thus, section 22 of the 1994 Statutes enacted section 11494, which provides: "In the case of any property seized or forfeiture proceeding initiated before January 1, 1994, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993 [the 1988 Statutes], *as if those sections had not been repealed, replaced, or amended.*" (Stats. 1994, ch. 314, § 22.)

The 1994 law expressly repealed both of the 1987 versions of section 11488.4—section 4(1987) and section 5(1987). (Stats. 1994, ch. 314, §§ 11-12.)

The 1994 law added a new section 11488.4, which provides that for *future* property seizures a criminal conviction is *not* a prerequisite to forfeiture of cash in the amount of $25,000 or more (§ 11488.4, subd. (i)(4); Stats. 1994, ch. 314, § 13), though a conviction is required for other specified types of property (§ 11488.4, subd. (i)(3); Stats. 1994, ch. 314, § 13).[14] The 1994 provision for future cases is thus similar to section 4(1987).

II. *Pursuant to the 1994 Law, the 1988 Statutes Apply to This Case*

The People contend this appeal is to be decided under the 1994 law, which makes the 1988 Statutes applicable to pending cases where the property was

---

[12]We requested and received supplemental briefing regarding the effect, if any, of the 1994 law on this case.

[13]Section 26 of the 1994 Statutes, chapter 314, states the law became effective immediately as an urgency statute necessary for the immediate preservation of the public peace, health, or safety, "[i]n order to effectively implement the provisions relating to the forfeiture and seizure of property involved in, or purchased with the proceeds from, a controlled substance offense . . . ." The 1994 law further stated: "It is the intent of the Legislature in repealing Sections . . . 11488.4 . . . to reduce the confusion and ambiguity which presently *exist* with respect to which, if any, version of those sections is operative." (Stats. 1994, ch. 314, § 25.)

[14]As enacted by the 1994 law, section 11488.4, subdivision (i) provides in part: "(4) *In the case of property described in subdivision (f)* [money, negotiable instruments, securities] *of Section 11470 that is cash* or negotiable instruments *of a value of not less than twenty-five thousand dollars ($25,000)*, the state or local governmental entity shall have the burden of proving by clear and convincing evidence that the property for which forfeiture is sought is such as is described in subdivision (f) of Section 11470. *There is no requirement for forfeiture thereof that a criminal conviction be obtained in an underlying or related criminal offense.*" (Italics added; Stats. 1994, ch. 314, § 13.)

The same statute provides that a criminal conviction *is* required for (1) cash in an amount less than $25,000, (2) vehicles, and (3) real property. (§ 11488.4, subd. (i)(3); Stats. 1994, ch. 314, § 13.)

seized and the forfeiture proceedings were commenced before January 1, 1994. We agree.

■ The forfeiture at issue here is a statutory, not a common law, right. (*People* v. *One 1953 Buick* (1962) 57 Cal.2d 358, 365 [19 Cal.Rptr. 488, 369 P.2d 16].) In cases involving statutory, as opposed to common law, rights and remedies, the reviewing court must dispose of the case under the statute in force when its decision is rendered. (*Beckman* v. *Thompson* (1992) 4 Cal.App.4th 481, 489 [6 Cal.Rptr.2d 60]; *Chapman* v. *Farr* (1982) 132 Cal.App.3d 1021, 1024 [183 Cal.Rptr. 606], citing *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 12 [97 P.2d 963]; see also, Gov. Code, § 9606 [persons acting under any statute act in contemplation that statute may be repealed at any time, unless vested rights would be impaired].) *People* v. *One 1953 Buick, supra,* 57 Cal.2d 358, a case involving forfeiture of a car used to transport narcotics, held the trial court properly applied the statute in effect at the time of its decision, rather than the statute in effect when the offense which was the basis for forfeiture occurred. (57 Cal.2d at pp. 362-366) [creditor of automobile sales contract was not required to show it investigated moral character of debtor, where statutory amendment deleted that requirement].)

■ As described above, the 1994 law repeals the 1987 Statutes (which had been revived upon expiration of the 1988 Statutes) and provides that pending cases where the property was seized or the forfeiture proceedings commenced before January 1, 1994, are to be decided under the 1988 Statutes. This means a criminal conviction is not a prerequisite to forfeiture. We note the 1988 Statutes were in effect at the time of the seizure of property in this case and at the time the instant action was filed in the trial court. Thus, the effect of the 1994 law on this case is merely to continue in force the same law that applied when this case arose.

Claimants raise various objections to application of the 1994 law. None has merit.

Claimants question whether the mandate to apply the 1988 Statutes to pending "proceeding[s] to forfeit" applies to pending appeals. We believe it plainly does.

Claimants contend the foregoing cases, holding that changes in statutory penalties will be applied to pending cases, stand only for the proposition that the "victim" who is subject to the penalty must receive the *benefit* any change in the statutes. Claimants assert the rule does not apply if the statutory change operates to the *detriment* of the person who is subject to the penalty. According to claimants, application of the 1994 law to them, making the 1988 Statutes govern this case, would operate to their detriment

because at the time they obtained their judgment in the trial court in January 1994, either (1) there was no forfeiture law in California, or (2) the law required a criminal conviction as a prerequisite to forfeiture. They assert that with the repeal of the 1988 Statutes on January 1, 1994, all right to recover under the forfeiture law also disappeared. According to claimants, they acquired a vested right in the judgment entered in their favor, and deprivation of that right by subsequent legislation constitutes a denial of due process. It is thus apparent claimants place much stock in the asserted validity of the judgment they obtained in mid-January 1994, which was decided under the law in force between January 1, 1994 (when the 1988 Statutes expired) and August 1994 (when the 1994 law took effect).

However, as we discuss in part III, *post,* judgment was improperly entered in this case because even at the time of the trial court's decision there was an asset forfeiture law in California, and that law did not require a criminal conviction as a prerequisite to forfeiture. Thus, we are not faced in this appeal with any question of a statutory change operating to the detriment of the property claimant.

Claimants also contend application of the 1994 law to this case is unconstitutional. They assert forfeiture statutes are penal in nature and therefore (1) the 1994 law would be unconstitutional as an ex post facto law,[15] and (2) application of the 1994 law to them would constitute double jeopardy[16] inasmuch as they have a judgment in their favor rendered by the trial court. Claimants also contend application of the 1994 law would deny them due process and equal protection.

However, assuming for the sake of argument that the forfeiture statutes at issue in this case are subject to the constitutional protections which attach to criminal cases, claimants' arguments are nevertheless unavailing.[17]

[15]The United States Constitution, article I, section 9, clause 3 provides: "No bill of attainder or ex post facto law shall be passed." California Constitution, article I, section 9, provides: "A bill of attainder, ex post facto law, or law impairing the obligation of contracts may not be passed."

[16]The Fifth Amendment to the United States Constitution provides in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." California Constitution, article I, section 15, provides in part: "Persons may not twice be put in jeopardy for the same offense . . . ." California Constitution, article I, section 24, provides in part: "In criminal cases the rights of a defendant . . . to not be placed twice in jeopardy for the same offense [. . .] shall be construed by the courts of this State in a manner consistent with the Constitution of the United States. [. . .]"

[17]Claimants cite *Austin* v. *United States* (1993) 509 U.S. __ [125 L.Ed.2d 488, 113 S.Ct. 2801], which held the Eighth Amendment's excessive fines clause applies to drug-related forfeitures of property under federal statutes. However, that decision was based on the determination that the Eighth Amendment applies to *civil* penalties constituting punishment.

As to the ex post facto argument, claimants argue the 1994 law "retroactively appl[ies] punishment to circumstances occurring before its enactment." We disagree.

■ In order for a criminal statute to be prohibited as an ex post facto law, the statute must (1) punish as a crime an act previously committed, which was innocent when done, (2) make more burdensome the punishment for a crime after its commission, or (3) deprive one charged with a crime of any defense available according to the law at the time when the act was committed. (*Collins* v. *Youngblood* (1990) 497 U.S. 37, 42-43 [111 L.Ed.2d 30, 39, 110 S.Ct. 2715]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 294 [279 Cal.Rptr. 592, 807 P.2d 434].) Procedural change in the conduct of trials does not violate the ex post facto clause. (*Tapia, supra*, 53 Cal.3d at pp. 294, 299-301.) Alteration of the definition of an offense does. (*Collins* v. *Youngblood, supra*, 497 U.S. at pp. 44, 46, 49 [111 L.Ed.2d at pp. 40, 41, 43].) However, "the constitutional prohibition on ex post facto laws applies only to penal statutes which *disadvantage* the offender affected by them." (*Collins* v. *Youngblood, supra*, 497 U.S. at p. 41 [111 L.Ed.2d at p. 38], italics added; see also, *People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149].)

■ Claimants contend the 1994 law disadvantages them because it subjects them to a trial without requiring evidence of a prior criminal conviction. However, assuming for the sake of argument that elimination of

---

(*Austin, supra*, 509 U.S. at p. __ [125 L.Ed.2d at pp. 496-497].) The court noted its decisions applying constitutional protections to civil forfeiture proceedings have adhered to the distinction between provisions that are limited to criminal proceedings and provisions that are not. (*Austin, supra*, 509 U.S. at p. __, fn. 4 [125 L.Ed.2d at p. 496].) The double jeopardy clause, which is limited to criminal proceedings, "has been held not to apply in civil forfeiture proceedings, but only in cases where the forfeiture could properly be characterized as remedial." (*Ibid.*) An example of a remedial purpose would be the reimbursement of law enforcement costs. (*United States* v. *Halper* (1989) 490 U.S. 435, 442-443 [104 L.Ed.2d 487, 498, 109 S.Ct. 1892].)

The California statutory scheme for drug-related forfeitures of property has been construed as a remedial structure to which the criminal ex post facto protection does not apply. (*People* v. *25651 Minoa Dr.* (1992) 2 Cal.App.4th 787 [3 Cal.Rptr.2d 577].) However, that case construed the 1988 Statutes and specified the statutes did not contain a scienter element, which is one of the factors used to determine whether the statutory scheme is in purpose or effect so punitive as to negate the civil label given to it. (*25651 Minoa Dr., supra*, 2 Cal.App.4th at p. 796.) The 1994 law does contain a scienter element in that the People must prove for future property seizures that the claimant had actual knowledge of the property's connection to drug trafficking. (§ 11488.5, subds. (d) & (e); Stats. 1994; ch. 314, § 15.) The 1994 law states "civil forfeiture is intended to be remedial by removing the tools and profits from those engaged in the illicit drug trade . . . ." (§ 11469; Stats. 1994, ch. 314, § 1.) However, we need not decide in this case whether the statutory scheme is essentially punitive because, even assuming for the sake of argument that criminal constitutional protections apply, they do not provide a basis to affirm the judgment in this case.

a conviction requirement would qualify as alteration of the definition of a forfeiture "offense," rather than a procedural change in the conduct of trial, there is no ex post facto violation in this case because the 1994 law's mandate that pending cases be governed by the 1988 Statutes does not disadvantage claimants. The 1988 Statutes were in effect at the time of the occurrence of the facts giving rise to this forfeiture proceeding. The 1994 law merely provides in this case that the law in effect at the time the property was seized and the proceeding was commenced shall continue to apply to this case. Moreover, as we discuss *post,* but for the 1994 law the operative provision would be section 4(1987), which also provided that a criminal conviction was not a prerequisite to forfeiture.

Thus, with respect to the question whether a criminal conviction is required, enactment of the 1994 law placed claimants in no different position that they would have been had the 1994 law not been enacted.

Consequently, claimants' ex post facto argument fails.[18]

■ As to claimants' double jeopardy argument, assuming for the sake of argument that the double jeopardy doctrine applies to this forfeiture proceeding, "[t]here is no jeopardy until the defendant is *placed on trial . . . .* Proceedings prior to an actual trial . . . do not place him in legal jeopardy within the meaning of the doctrine." (1 Witkin, Cal. Criminal Law (2d ed. 1988) Defenses, § 277, p. 320, and cases cited therein.) In *Serfass* v. *United States* (1975) 420 U.S. 377 [43 L.Ed.2d 265, 95 S.Ct. 1055], a defendant sought to invoke the double jeopardy provision in the People's appeal from the trial court's pretrial order dismissing an indictment based on a legal ruling made upon consideration of records and an affidavit setting forth evidence to be adduced at trial. The United States Supreme Court held the double jeopardy clause did not apply because jeopardy never attached. The defendant had not waived his right to a jury trial, and the pretrial motion did not " 'put [him] to trial before the trier of the facts.' " (*Serfass, supra,* 420 U.S. at p. 388 [43 L.Ed.2d at p. 274].) The high court rejected the argument that the dismissal order was equivalent to an " 'acquittal on the merits' " for double jeopardy purposes because it was based on evidentiary facts outside the indictment. (*Serfass, supra,* 420 U.S. at p. 390 [43 L.Ed.2d at p. 275].) "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy. [¶]

---

[18]Claimants make a throwaway remark that the 1994 law is an impermissible bill of attainder to the extent it attempts to apply a punishment after a judge has ruled in their favor. We need not consider this remark, which is unsupported by legal authority. (*People* v. *Callegri* (1984) 154 Cal.App.3d 856, 865 [202 Cal.Rptr. 109]; *Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].)

. . . [¶] [A]n accused must suffer jeopardy before he can suffer double jeopardy." (*Serfass, supra,* 420 U.S. at pp. 391-393 [43 L.Ed.2d at pp. 276-277].)

■ Here, the record reflects claimants requested a jury trial. The judgment which is the subject of this appeal arose not after commencement of trial but in pretrial motions directed to the court. Although claimants' motion for summary judgment presented facts outside the pleadings, i.e., the absence of a criminal conviction, neither their motion for summary judgment nor their motion for judgment on the pleadings put claimants in jeopardy of an adverse judgment. Therefore, the double jeopardy clause does not apply.

Claimants cite *Smalis* v. *Pennsylvania* (1986) 476 U.S. 140 [90 L.Ed.2d 116, 106 S.Ct. 1745], where the double jeopardy clause was applied to a "demurrer" sustained by a trial court in a criminal case. There, however, jeopardy had attached, because the bench trial had begun. The "demurrer" was presented and sustained at the close of the prosecution's presentation of its case-in-chief at trial. (*Smalis, supra,* 476 U.S. at p. 141 [90 L.Ed.2d at p. 119].)

Finally, as to claimants' due process/equal protection argument, their point is unclear. They assert: "There can be no rational basis for subjecting [claimants] to a totally different law for the very same acts than an individual who committed the very same after January 1, 1994. As the statute reads on the face of it, currently now, [claimants] could be tried for the very same acts and would be tried under a lesser burden of proof than another person currently on trial. This makes absolutely no sense, has no rational basis and is a denial of equal protection of the law."

Claimants' argument makes no sense, even apart from their failure to understand that this is an in rem proceeding against the property, not an action against claimants for commission of acts. Though not expressed by claimants, we note there are some differences in the burden of proof contained in the 1994 law for prospective property seizures and the 1988 Statutes made applicable to pending cases by the 1994 law.[19] However, to the extent claimants mean to complain the 1994 law imposes a more onerous

[19]For example, the 1994 law requires in section 11488.5, subdivisions (d) and (e), that for future seizures the People must prove the claimant had actual knowledge of the property's connection to drug trafficking. (Stats. 1994, ch. 314, § 15.) The 1988 Statutes do not require actual knowledge but only that the claimant "knew or should have known" of facts which made the property subject to forfeiture. (Stats. 1988, ch. 1492, § 11, p. 5292.) Additionally, the 1994 law requires for future cases proof beyond a reasonable doubt for some kinds of property, but proof by clear and convincing evidence for cash of $25,000 or more. (§ 11488.4, subd. (i); Stats. 1994, ch. 314, § 13.) (The legislative history of the 1994 law suggests the

burden of proof on the People for future property seizures than it imposes for pending cases, claimants are not entitled to the advantages of the prospective law as a matter of constitutional compulsion. A similar argument was rejected in *Baker* v. *Superior Court* (1984) 35 Cal.3d 663 [200 Cal.Rptr. 293, 677 P.2d 219], where the Supreme Court held a prospective change in legislation benefitting mentally disordered sex offenders need not be applied to persons who were committed before the amendment. ■ " 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment.' [Citation.] '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time. [Citations.]' " (*Baker, supra,* 35 Cal.3d at pp. 668-669; see also, *In re Estrada* (1965) 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948] [dictum: no constitutional bar to Legislature opting to retain harsher law for pending cases].)

In support of their due process/equal protection argument, claimants cite *In re Thomson* (1980) 104 Cal.App.3d 950 [164 Cal.Rptr. 99]. There the appellate court held an amendment of a Penal Code provision increasing the maximum parole period could not be retroactively applied to prisoners whose terms and release dates were fixed before the enactment but who were not actually released on parole before the effective date of the legislation. "Retroactive application of the amendment . . . violates Thomson's right to equal protection of the law. The Attorney General does not state a reasonable basis for different treatment of persons . . . released on parole before January 1979, as compared to persons . . . released somewhat later. That there exist good reasons for the amendment itself, does not necessarily prove the fairness of its retroactive application . . . ." (*In re Thomson, supra,* 104 Cal.App.3d at p. 955.)

Thus, *Thomson* involved retroactive application of a change in law. ■ The case before us does not involve retroactive application of a change. It involves revival and continued applicability of the same law that was in effect at the time of seizure of the property and at the time the proceeding was filed in the trial court.

The fact that the law in force at the time of the seizure expired in January 1994 did not prevent the Legislature from reviving it in August 1994 to be applied to pending cases. ■ "A reviving act is one which restores legal

lighter burden of proof for large amounts of cash was because "it may not be possible to prove beyond a reasonable doubt that the person in possession of the money has committed a drug crime." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 114 (1993-1994 Reg. Sess.) as amended Apr. 29, 1993, p. 5.)) The 1988 Statutes require proof by a preponderance of the evidence. (Stats. 1988, ch. 1492, § 9, p. 5290.)

existence and force to a statute that has been expressly or impliedly repealed. A repealed statute may be revived by express enactment or by implication. . . . [¶] In the absence of an express constitutional prohibition, an act may be revived by mere reference to its title without setting out the act revived at length. A reviving act is not an amendment within the constitutional limitation that no act shall be amended by reference to its title only. Nor is it a revision under the constitutional limitation applicable to revisions." (1A Sutherland, Statutory Construction (5th ed. 1993) § 22.26, pp. 252-253, fns. omitted.) California's Constitution contains no prohibition or limitation on revival of a repealed statute.

 Claimants cite no authority to support their suggestion that the Legislature loses the power to revive a statute unless it acts before the statute expires.

We conclude claimants fail to show any constitutional bar to application of the 1994 law to this case.

III. *Judgment Was Improper*

Claimants appear to argue that, effective January 1, 1994, *no* asset forfeiture law was in effect, thereby entitling them to judgment before the Legislature enacted the 1994 statutes. The People argue that there was an asset forfeiture law in effect at the time the trial court ruled in early January 1994, and the trial court erred in determining a criminal conviction was a prerequisite to forfeiture in this case. We agree with the People.

As indicated, the various versions of section 11488.4 as pertinent to the property at issue in this case may be summarized as follows:

1987 Statutes
Section 4(1987) (pre-1989)—no conviction required
Section 5(1987) (post-1989)—conviction required

1988 Statutes—no conviction required

1994 Statutes—no conviction required

Claimants argue lapse of the 1988 Statutes left California with no asset forfeiture law at all as of January 1, 1994. They alternatively argue that upon lapse of the 1988 Statutes, the operative provision was section 5(1987), which required a criminal conviction. Under either theory, argue claimants, judgment was properly entered and cannot be undone by subsequent legislation. Neither theory has merit.

A. *Lapse of 1988 Statutes Did Not Leave California With No Asset Forfeiture Law*

■ Claimants take the position that the lapse of the 1988 Statutes left California with no asset forfeiture law. We disagree.

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (. . . *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658.) In order to determine this intent, we begin by examining the language of the statute. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 . . . .) But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 . . . .) Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' (*Lungren* v. *Deukmejian, supra,* [45 Cal.3d] at p. 735.) Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814.)" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420]; see also, Code Civ. Proc., §§ 1858-1859.)

When the temporary 1988 Statutes were enacted, section 4(1987) was in effect; section 5(1987) had not yet gone into effect. The 1988 Statutes repealed section 5(1987) without qualification,[20] temporarily amended section 4(1987),[21] and specified that upon lapse of the temporary amendments, the asset forfeiture provisions "as they read on December 31, 1988," i.e., section 4(1987), would be revived. (Fn. 10, *ante.*)

The dispute in this case arises from the fact that the Legislature never expressly deleted from section 4(1987) the self-sunsetting clause which called for repeal of section 4(1987) on January 1, 1989. The argument is that section 4(1987) "as it read on December 31, 1988" repealed itself on January 1, 1989, such that the January 1994 revival of that provision "as it read on December 31, 1988," left California with no asset forfeiture law.

---

[20]Section 10 of the 1988 Statutes stated: "Section 11488.4 of the Health and Safety Code, as added by Chapter 924 of the Statutes of 1987, is repealed." (Stats. 1988, ch. 1492, § 10, p. 5291.) The version of section 11488.4 which was "added" by Chapter 924 of the Statutes of 1987 was section 5. (Stats. 1987, ch. 924, § 5, p. 3117.)

[21]Section 9 of the 1988 Statutes provided: "Section 11488.4 of the Health and Safety Code, as amended by Section 4 of chapter 924 of the Statutes of 1987, is amended to read . . . ." (Stats. 1988, ch. 1492, § 9, p. 5288.)

However, the self-sunsetting clause was itself qualified. Thus, section 4(1987) provided it would sunset on January 1, 1989, "unless a later enacted statute, which is enacted before January 1, 1989, deletes or extends that date." (Fn. 6, *ante.*)

Here, a later enacted statute (the 1988 Statutes), which was enacted before January 1, 1989, in effect deleted that date by providing that upon lapse of the 1988 Statutes on January 1, 1994, the "sections as they read on December 31, 1988, shall have the same force and effect as if they had not been amended." (Stats. 1988, ch. 1492, § 16, p. 5298.)

Thus, while the 1988 legislation did not expressly delete the sunset clause of section 4(1987), it implicitly did so.

Claimants rely on an opinion of the Legislative Counsel, issued in November 1993, which concluded that upon expiration of the 1988 Statutes on January 1, 1994, California would be left with no asset forfeiture law at all. (Ops. Cal. Legis. Counsel, No. 30765 (Nov. 24, 1993) Controlled Substances: Asset Forfeiture.)

Opinions of the Legislative Counsel are not binding on the court, though they may be considered in ascertaining legislative intent. (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 16-17 [270 Cal.Rptr. 796, 793 P.2d 2].)

The Legislative Counsel's opinion acknowledges the language of section 16 of the 1988 Statutes (fn. 10, *ante*) evinces a legislative intent that asset forfeiture law in some form continue. However, the Legislative Counsel believed this intent could only be given effect by ignoring the "repealer language" of section 4(1987), which repealed that version on January 1, 1989. The Legislative Counsel believed the courts would not apply this construction, because forfeitures are disfavored in law. (Ops. Cal. Legis. Counsel, No. 30765, *supra*, at p. 5, citing *Baca* v. *Minier* (1991) 229 Cal.App.3d 1253, 1265 [280 Cal.Rptr. 810] [forfeiture laws are to be strictly construed in favor of persons against whom they are sought to be imposed].) However, the Legislative Counsel further stated: "It is possible that the courts may opt for this construction since Section 16 [of the 1988 Statutes; see fn. 10, *ante*] when adopted would almost certainly have had no effect unless the repealer language in the December 31, 1988, version of the sections was ignored, and 'the Legislature cannot be presumed to have indulged in idle acts,' (*Stafford* v. *Realty Bond Service Corp.* [1952] 39 Cal.2d 797, 805 [].)" (Ops. Cal. Legis. Counsel, No. 30765, *supra*, at p. 5.)

As indicated, we do not believe it is necessary to ignore the repealer language, because the repealer language itself was conditional, and the

condition for repeal was not met. Moreover, the alternative construction is that the Legislature caused section 4(1987) to flare briefly into existence on January 1, 1994, only to extinguish itself instantaneously. This would plainly be an absurd result which the Legislature did not intend.

Additionally, the Legislature's subsequent action in passing the 1994 Statutes shows the Legislative Counsel's November 1993 opinion was incorrect. Opinions of the Legislative Counsel have value because they are prepared to assist the Legislature in its consideration of pending legislation, and it is assumed that the Legislature will take corrective measures if the opinion misstates the legislative intent. (*California Assn. of Psychology Providers*, *supra*, 51 Cal.3d at pp. 16-17.)

Here, the Legislative Counsel's opinion was prepared while the Legislature was considering the bill which ultimately became the 1994 law. The Legislature took corrective measures by enacting the 1994 law, which expressly continues asset forfeiture law in this state both for pending cases and for future seizures of property. The Legislature expressly stated its intent to "reduce the confusion and ambiguity which presently exist with respect to which, if any, version of those sections is operative." (Stats. 1994, ch. 314, § 25; fn. 13, *ante*.)

Thus, we do not find the Legislative Counsel's opinion persuasive.

We conclude lapse of the 1988 Statutes on January 1, 1994, did not leave California with no asset forfeiture law.

B. *Section 5(1987) Never Went Into Effect*

■ The People argue the trial court erred in determining that lapse of the 1988 Statutes brought into operation section 5(1987). We agree.

The trial court applied section 5(1987) of the 1987 Statutes to this case. Since section 5(1987) would require a criminal conviction as a prerequisite for forfeiture and there was no criminal conviction in this case, the court entered judgment for claimants.

The court believed this result comported with the Legislature's intent and was dictated by Government Code section 9611,[22] which provides that upon lapse of a temporary statute the former law goes back into effect as if the

---

[22]Government Code, section 9611, provides: "Notwithstanding any other provision of this chapter, whenever a provision of law is temporarily suspended, or is expressly or impliedly modified or repealed by a provision which is declared to be effective for only a limited

temporary statute never existed. Thus, the trial court treated this case as if the 1988 Statutes never existed and concluded section 5(1987) (which but for the 1988 Statutes would have gone into effect on January 1, 1989) was the current statute.

We disagree with the trial court's construction. Thus, the Legislature in section 16 of the 1988 Statutes specifically chose to give "force and effect" to the "December 31, 1988," version of the statutes. (Stats. 1988, ch. 1492, § 16, p. 5298; fn. 10, *ante.*) This language, in our view, clearly and unambiguously revived section 4(1987), not section 5(1987). Where the language is clear, there is no need to resort to indicia of legislative intent. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr 115, 755 P.2d 299].)

Revival of section 4(1987) rather than section 5(1987) does not violate Government Code section 9611. (Fn. 22, *ante.*) That statute—by stating a provision will not be "deemed" to be permanently repealed—plainly addresses the situation where the Legislature has not otherwise specified what will happen when a temporary provision expires. The statute cannot be construed to prevent the Legislature from choosing which of two prior versions to make operative.

Claimants argue the language of section 16 of the 1988 Statutes (fn. 10, *ante*) clearly made *section 5(1987)* operative, because the language referred to the statutes "as they read on" December 31, 1988, and on that date the statutes "read" that there were two versions of section 11488.4, one of which would last one more day, to be replaced by the other.

Assuming there is some ambiguity, the legislative history brings us to the same conclusion that upon lapse of the 1988 Statutes, section 4(1987) became operative, and the Legislature implicitly deleted the self-sunsetting clause of section 4(1987). Thus, the Legislative Counsel's Digest stated the intent that the "December 31, 1988, versions [be] revived on January 1, 1994." (See fn. 10, *ante.*) Had the Legislature intended to make section 5(1987) the operative provision, it could have done so by specifying that the provisions originally scheduled to become operative January 1, 1989, would become operative upon lapse of the 1988 Statutes. The Legislature did not do so but expressly revived the "December 31, 1988" version of the 1987 statutes, i.e., section 4(1987).

Claimants argue the Legislature could not have chosen the January 1, 1989, date, because that date "would have made no sense as there was no

period, the original provisions are not to be deemed repealed, but upon the expiration of the time of the temporary suspension or the effectiveness of the inconsistent provision, the original provision shall have the same force and effect as if the temporary provision had not been enacted."

law to be read on that date other than the law that was being sunsetted . . . ." However, claimants cite no authority, and we see no reason, why the Legislature could not have expressed an intent to make section 5(1987) operative upon lapse of the 1988 Statutes, had the Legislature desired to do so.

We conclude that upon lapse of the 1988 Statutes, section 4(1987) became operative. Section 5(1987)—the only version which might have required a criminal conviction as a prerequisite to forfeiture in this case—never became operative.

We thus conclude that at all times since seizure of the contested property in this case there has been an asset forfeiture law in California and that asset forfeiture law has not required a criminal conviction as a prerequisite to forfeiture of the property at issue in this case. Consequently, the trial court erred in entering judgment for claimants. We therefore need not discuss the People's argument that they acquired vested rights in the property pursuant to the law in effect at the time of the seizure, which rights cannot be divested by subsequent legislative action.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

Davis, J., and Raye, J., concurred.

A petition for a rehearing was denied March 29, 1995, and the opinion was modified to read as printed above.