Filed 12/27/22

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C095640 |
| Plaintiff and Respondent, | (Super. Ct. No. LODCRFE20060000384) |
| v. | |
| MATTHEW DOUGLAS WHITE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lauren P. Thomasson, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

In May 2006, 25-year old Matthew Douglas White, while drunk and speeding, struck a car stopped on the shoulder of the highway with its hazard lights on, killing the driver and injuring two passengers.  (*People v. White* (Jan. 21, 2011, C063838) [nonpub. opn.].)  A jury found defendant guilty of second degree murder, gross vehicular manslaughter while intoxicated, driving under the influence causing injury, and driving

1

with a blood alcohol level of .08 percent or higher causing injury, with enhancements for causing and inflicting great bodily injury on multiple victims.[1] (*Ibid.*) The trial court sentenced defendant to an indeterminate term of 15 years to life for second degree murder, and a consecutive determinate middle term of two years for driving under the influence with injury.[2] The conviction became final, by defendant's admission, in December 2012.

Some eight years later, in 2020, defendant requested and received a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to make a record of information relevant to an eventual youthful offender parole hearing. He then filed a motion to vacate his sentence and remand for resentencing under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) based on amendments to Penal Code section 654 following the passage of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1; Assembly Bill 518).[3] The trial court denied the motion.

Defendant appeals, arguing: (1) the *Franklin* hearing rendered the judgment nonfinal and subject to Assembly Bill 518; (2) Assembly Bill 518 should be applied retroactively to all convictions; and (3) failure to remand for resentencing would deprive him of equal protection under the law. We will reject these contentions and affirm.

## I. DISCUSSION

At the time of sentencing, section 654, former subdivision (a) required that a defendant who committed an act punishable by two or more provisions of law be

---

[1] Defendant was also found guilty of driving with a suspended license, exhibition of speed, and unsafe passing on the right. (*People v. White, supra,* C063838.)

[2] The trial court imposed and stayed the middle term of six years for gross vehicular manslaughter while intoxicated, and the middle term of two years for driving under the influence with a blood alcohol level in excess of 0.08 percent.

[3] Undesignated statutory references are to the Penal Code.

punished under the provision that provided for the longest possible term. (Stats. 1997, ch. 410, § 1.) Effective January 1, 2022, Assembly Bill 518 amended section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) Thus, under newly amended section 654, a trial court is no longer required to punish under the longest possible term of imprisonment when multiple offenses are based on the same act or omission. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.) Section 654 "now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*Mani, supra,* at p. 379.)

The parties agree, as do we, that Assembly Bill 518 "applies retroactively to defendants . . . whose convictions were not yet final when the law became effective January 1, 2022." (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.) The parties also agree that defendant's conviction became final before Assembly Bill 518 went into effect. The parties disagree, however, on whether Assembly Bill 518 may nonetheless apply. We conclude it does not.

A.      *Finality of Conviction*

Defendant argues he is entitled to remand under Assembly Bill 518 because the law applies to convictions that are not yet final, and the *Franklin* hearing "is a substantive hearing that reopens, unfinalizes, and corrects the prior sentence." Defendant offers several variations on this theme. First, he argues the *Franklin* hearing was "necessary to cure the unconstitutionality of the prior sentence." Second, he argues section 1204 and California Rules of Court, rule 4.437 (rule 4.437), the procedures followed in *Franklin* hearings, are procedural provisions for sentencing, and therefore, *Franklin* hearings can only be procedurally valid if they are extended portions of the original sentencing hearing. In a related vein, he observes the California Supreme Court has determined that section 1203.01, a statute authorizing a trial court to receive postjudgment submissions

3

for transmission to the Board of Parole Hearings, authorizes a trial court to convene a *Franklin* hearing for a youthful offender whose judgment is final. (*In re Cook* (2019) 7 Cal.5th 439, 455 (*Cook*).) Relying on *Cook*, defendant argues, third, that if a *Franklin* hearing is an expansion of section 1203.01, it must be considered an extension of the original sentencing hearing. We disagree.

Some background on *Franklin* hearings may be helpful before we address defendant's specific contentions. The United States Supreme Court and California Supreme Court have declared that mandated life without parole sentences and their equivalents imposed on juveniles are unconstitutional. (*Miller v. Alabama* (2012) 567 U.S. 460, 479; *People v. Caballero* (2012) 55 Cal.4th 262, 268.) The Legislature responded to these precedents by adopting Senate Bill No. 260 (2013-2014 Reg. Sess.) (Stats. 2013, ch. 312, § 4; Senate Bill 260) in 2014. Senate Bill 260 added section 3051 to the Penal Code. Under section 3051, a person incarcerated for a "controlling offense" when the person was 25 years of age or younger is eligible for release on parole at a "youth offender parole hearing." (§ 3051, subds. (a)(1), (b).) Depending on the offense, the hearing must be held no later than the prisoner's 15th, 20th, or 25th year of incarceration. (§ 3051, subd. (b).) The right to a youth offender parole hearing applies retrospectively to all eligible youth offenders regardless of their date of conviction. (*Franklin, supra,* 63 Cal.4th at p. 278.)

To provide a meaningful opportunity for the youth offender to obtain release and for the Board of Parole Hearings to "give great weight" to youth-related factors (§ 4801, subd. (c)), the prisoner must be guaranteed a sufficient opportunity to put on the record relevant information of his or her characteristics and circumstances at the time of the offense. (*Franklin, supra,* 63 Cal.4th at pp. 282-284.) Hearings for admitting this evidence are referred to as *Franklin* hearings. (See *Cook, supra,* 7 Cal.5th at pp. 458-459.) In *Franklin* hearings, the trial court may receive submissions and testimony

pursuant to procedures set forth in section 1204 and rule 4.437, and subject to the rules of evidence.  (*Franklin, supra,* at p. 284.)

Contrary to defendant's contention, a *Franklin* hearing does not reopen a final judgment or sentencing.  (*People v. Lizarraga* (2020) 56 Cal.App.5th 201, 207 (*Lizarraga*).)[4]  Rather, it is an  "evidence preservation process" to gather evidence for the eventual determination of parole, not a process to reopen or reconsider a sentence.  (*Cook, supra,* 7 Cal.5th at pp. 446; *id.* at p. 450.)  Indeed, "a *Franklin* proceeding is unrelated to the validity of the defendant's sentence.  Neither the entitlement to a youth offender parole hearing, nor the evidence preservation process 'disturb[s] the finality of state convictions.' " (*Id.* at p. 451.)

When the Legislature enacted section 3051, it "did not envision that the original sentences of eligible youthful offenders would be vacated and that new sentences would be imposed to reflect parole eligibility during the 15th, 20th, or 25th year of incarceration.  The continued operation of the original sentence is evident from the fact that an inmate remains bound by that sentence, with no eligibility for a youthful offender parole hearing, if 'subsequent to attaining [26] years of age' the inmate 'commits an additional crime for which malice aforethought is a necessary element . . . or for which the individual is sentenced to life in prison.'  (§ 3051, subd. (h); [].)  But section 3051 has changed the manner in which the juvenile offender's original sentence operates by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole.  The Legislature has effected this change by operation of law, with

---

[4] Defendant urges us to depart from *Lizarraga* by arguing it is not binding authority. While we are aware that an opinion of an appellate court in another district is not controlling, we are mindful that such a decision is persuasive authority.  (*People v. McDonald* (2013) 214 Cal.App.4th 1367, 1377.)  Defendant offers no argument or authority which would cause us to doubt the sound reasoning of the *Lizarraga* court.

5

no additional resentencing procedure required." (*Franklin, supra,* 63 Cal.4th at pp. 278-279.)

Just as the provision of a youth offender parole hearing does not affect the underlying sentence, a *Franklin* hearing to ensure a fair parole hearing does not affect the defendant's final judgment. When a youth offender receives a *Franklin* hearing, the offender "need not be resentenced" because the sentence remains valid. (*Franklin, supra,* 63 Cal.4th at p. 284.) At a *Franklin* hearing, the youth offender "may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law.' " (*Ibid*.) But a *Franklin* hearing does not reopen or affect the defendant's sentence. (*Lizarraga, supra,* 56 Cal.App.5th at p. 207.)

Defendant argues *Franklin* hearings are substantive hearings because they are "necessary to cure the unconstitutionality of the prior sentence." This argument is without merit. Senate Bill 260 cured an unconstitutional juvenile sentence by mandating a parole hearing where a meaningful opportunity for parole was not part of the original sentence. (*Franklin, supra,* 63 Cal.4th at pp. 277-280.) A *Franklin* hearing is designed to ensure only that the eventual parole hearing is fair. The California Supreme Court has expressed no view on whether a *Franklin* hearing is constitutionally required. (*Cook, supra,* 7 Cal.5th at p. 458.) It has, however, stated that a *Franklin* hearing is not related to the sentence and does not reopen the underlying conviction. (*Id.* at p. 451.)

Defendant's argument that *Franklin* hearings are without statutory authorization unless they are considered to be extended parts of the original sentencing hearing is also incorrect. Although *Franklin* hearings follow the procedures provided in section 1204 and rule 4.437, those provisions are not the basis for the hearings. The *Cook* court held section 1203.01, subdivision (a), augmented by the court's inherent authority to craft necessary procedures under Code of Civil Procedure section 187, grants the trial court authority to conduct a *Franklin* hearing. (*Cook, supra,* 7 Cal.5th at p. 452.) Section 1203.01, subdivision (a) authorizes the judge, the district attorney, defense counsel, and the investigating law enforcement agency, "after judgment has been pronounced," to file with the court clerk brief statements of their views regarding the person "convicted or sentenced and the crime committed," along with any probation reports. (§ 1203.01, subd. (a).) The clerk will then forward the statements to the Department of Corrections and Rehabilitation, thereby providing information to assist the effective administration of law, including parole laws. (§ 1203.01, subd. (a); *Cook, supra,* at p. 453.)

The *Cook* court determined that section 1203.01's purpose parallels that of a *Franklin* hearing, which is to preserve information and make it available at an eventual youth offender parole hearing. (*Cook, supra,* 7 Cal.5th at p. 453.) The court also stated that recognizing a trial court's authority under section 1203.01 to gather youth offender evidence effectuates sections 3051 and 4801. (*Cook, supra,* at p. 453.) Under *Cook,* then, *Franklin* hearings have statutory authority separate and apart from the actual sentencing.

Defendant's argument that, if a *Franklin* hearing is an expansion of section 1203.01, it must be considered an extension of the original sentencing is also without merit. The process provided in section 1203.01 is not part of the defendant's actual sentence. It occurs "after judgment [is] pronounced." (§ 1203.01, subd. (a).) In a criminal case, the trial court's oral pronouncement of sentence constitutes the judgment. (*People v. Villatoro* (2020) 44 Cal.App.5th 365, 369.) Thus, the section 1203.01 process

7

begins after sentencing. Moreover, nothing in section 1203.01 authorizes the court to reconsider the sentence. It merely authorizes the court and the participating parties to submit information about the defendant for use by the Department of Corrections and Rehabilitation. Thus, an extension of section 1203.01 to authorize a *Franklin* hearing, like section 1203.01 itself, is not part of the sentence or judgment and does not authorize revisiting the sentence.

For all these reasons, we reject defendant's argument that the *Franklin* hearing rendered the judgment nonfinal and subject to Assembly Bill 518.

B. *Retroactivity of Assembly Bill 518*

Defendant next argues that remand for resentencing would be appropriate, even assuming the judgment is final. He observes that the Legislature's intent was to reverse "tough on crime" policies and restore discretion to judges. This intent, he says, would be best served by applying Assembly Bill 518 retroactively to all convictions, whether or not they are final. We are not persuaded.

New criminal laws generally do not apply to prosecutions initiated before the law went into effect. (§6; *Estrada, supra,* 63 Cal.2d at pp. 746-748.) Our Supreme Court recognized an exception to this rule in *Estrada,* which held that new laws that mitigate punishment are presumed to apply to cases charged before the law's enactment but which are not yet final. (*Estrada, supra,* at p. 745.) "Absent evidence to the contrary, we presume that when the Legislature 'amends a statute so as to lessen the punishment,' it 'must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' " (*People v. Padilla* (2022) 13 Cal.5th 152, 160 (*Padilla*).)

The California Supreme Court has not delineated the constitutional parameters of the " 'Legislature's power to intervene in judicial decisionmaking,' " but it has stated that "any restrictions on that power would attach at 'the conclusion of a criminal proceeding as a whole' – i.e., when ' "the last word of the judicial department with regard to a

8

particular case or controversy" ' has issued." (*Padilla, supra,* 13 Cal.5th at p. 161.) "The key date is the date of final judgment. . . . [¶] . . . [¶] . . . The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Estrada, supra,* 63 Cal.2d at pp. 744-745.)

This is not to say the Legislature cannot enact laws which affect final judgments. Our Supreme Court has approved laws "that alter indisputably final cases when they create new rules or procedures by which a defendant may seek relief." (*Padilla, supra,* 13 Cal.5th at p. 161; see *People v. Esquivel* (2021) 11 Cal.5th 671, 677.) However, where the new legislation provides no new rules or procedures for relief, the *Estrada* presumption applies: "[A]bsent a discernable intent to the contrary, ameliorative criminal laws apply to all nonfinal cases." (*Padilla, supra,* at p. 162.) And they apply retroactively only to nonfinal cases. (*Estrada, supra,* 63 Cal.2d at p. 746.)

Our Supreme Court has also "made clear that in order to rebut *Estrada*'s inference of retroactivity concerning ameliorative statutes, the Legislature must 'demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*People v. Frahs* (2020) 9 Cal.5th 618, 635.) Nothing in Assembly Bill 518 suggests the Legislature intended to alter the *Estrada* presumption here. Assembly Bill 518 is silent on the question of retroactivity and provides no mechanism by which youth offenders whose convictions are final can petition for resentencing. Accordingly, we conclude Assembly Bill 518's retroactivity extends only to defendants whose cases were not final at the time the new law was enacted. (See *Lizarraga, supra,* 56 Cal.App.5th at pp. 207-208.) Defendant's judgment became final before Assembly Bill 518 was enacted; therefore, the ameliorative provisions of the new law are not available to him.

C.    *Equal Protection*

Finally, defendant argues that our failure to remand for resentencing under Assembly Bill 518 would deprive him of equal protection under the state and federal

9

constitutions.  He argues Assembly Bill 518 draws an arbitrary distinction between defendants whose judgments became final before the effective date of the new law and those whose judgments became final afterwards.  He argues no compelling interest or even rational basis justifies such a distinction.  We disagree.

Relying on *People v. Olivas* (1976) 17 Cal.3d 236, 251, defendant argues that strict scrutiny applies where the state makes sentencing distinctions between persons similarly situated.  Our Supreme Court, however, has explained that *Olivas* does not require " 'the courts to subject all criminal classifications to strict scrutiny requiring the showing of a compelling state interest therefor.' "  (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838, quoting *People v. Davis* (1979) 92 Cal.App.3d 250, 258.)

Contrary to defendant's suggestion, "[a] criminal defendant has no vested interest ' "in a specific term of imprisonment or in the designation a particular crime receives." ' ([*People v. Wilkinson, supra,* 33 Cal.4th] at p. 838.)  It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard.  (*Id.* at p. 840.)  Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail.  (*People v. Ward* (2005) 36 Cal.4th 186, 217.)  Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law.  (*Heller v. Doe* (1993) 509 U.S. 312, 319 (*Heller*))."  (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

Because Assembly Bill 518's differing treatment of defendants whose judgments are not final does not involve a fundamental right, and defendant does not contend the measure discriminates against members of a suspect class, it need only survive rational basis review to be constitutional.  Under that standard of review, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' (*Heller, supra,* 509 U.S. 312, 320.)  In other words, the legislation survives constitutional scrutiny as long as there is

10

' "any conceivable state of facts that could provide a rational basis for the classification." ' " (*People v. Turnage, supra,* 55 Cal.4th at p. 74.)

Such a rational basis exists here. The California Supreme Court has recognized that the Legislature has a rational basis for refusing to make new laws that reduce criminal sentences fully retroactive—namely, "to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*In re Kapperman* (1974) 11 Cal.3d 542, 546.) The voters have the same prerogative. (*People v. Floyd* (2003) 31 Cal.4th 179, 188.) Consequently, " '[a] reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection.' " (*Id.* at p. 189.) By the same reasoning, limiting a sentence reduction's retroactivity to cases not then final also does not deny equal protection. (*Lizarraga, supra,* 56 Cal.App.5th at pp. 208-210.)

" 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment. (*People v. Aranda* (1965) 63 Cal.2d 518, 532.) '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.' (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505.)" (*Baker v. Superior Court* (1984) 35 Cal.3d 663, 668-669.) Limiting Assembly Bill 518's retroactivity to defendants whose cases are not yet final thus does not violate defendant's equal protection rights.

## II.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HOCH, Acting P. J.

/S/

_____

EARL, J.